JOHN RIVERS v. YAZOO & MISSISSIPPI RAILROAD COMPANY.

[43 South., 471.]

1. CORPORATIONS. *Slander. Liability. Agents.*

A corporation is liable for slander uttered by its agent acting within the scope of his employment and in the performance of his duties touching the matter in question.

2. SAME. *Knowledge. Approval. Ratification.*

In such case it is unnecessary for a plaintiff to show that the slanderous words were spoken with defendant's knowledge or with its approval or that it ratified the act of the agent.

FROM the circuit court of Yazoo county.

HON. DAVID M. MILLER, Judge.

Rivers, appellant, was plaintiff in the court below; the railroad company, appellee, was defendant there. From a judgment in favor of defendant, the plaintiff appealed to the supreme court.

Plaintiff's suit, as originally filed, was for slander, his declaration being in two counts, each of which set out certain alleged slanderous words uttered, June 7, 1905, concerning him by an employe of the railroad company. The declaration was filed June 1, 1906, the suit being instituted within a few days of the expiration of one year following the speaking of the words. Code 1892, § 2742, reads as follows: "All actions for slanderous words concerning the persons or title, and for

libels, shall be commenced within one year next after the cause of such action accrued, and not afterwards."

Subsequently, October 31, 1906, before pleas filed by the defendant, plaintiff filed an amended declaration, containing four counts; the first one set out a letter written jointly to the chief engineer, the roadmaster and chief time checker, of defendant, by one of its employes, whose duty it was to investigate the records and inspect the work of plaintiff, the plaintiff being a section foreman of the company; the contents of which letter, plaintiff alleged, were false and libelous and injurious to his reputation. The letter was alleged to have been written June 7, 1905 (more than a year before the filing of the amended declaration, but less than a year before the filing of the original declaration based solely on slander). The last three counts set out certain alleged slanderous words uttered by an employe of defendant concerning plaintiff, in the absence of plaintiff, and in the presence of others, two of these three counts being reiterations of the two counts in the original declaration.

To the first count of the amended declaration, being for libel based on the letter mentioned, the railroad company filed special pleas, the third plea, referred to in the opinion, being "that the cause of action did not accrue within one year from the filing of the said amended declaration, and the same is barred by the statute of limitation." The plaintiff demurred to this special plea, but the circuit court overruled the demurrer.

To the second, third and fourth counts of the amended declaration the defendant company demurred on the following ground: "That the said counts are for alleged slander by an employe of defendant, and it nowhere appears in said counts that said alleged slanderous words were uttered and published with knowledge of the defendant, or with its approval or consent, or that the same were ever ratified by the defendant." The circuit court sustained the demurrer. And, as the plaintiff declined to plead further, judgment final was rendered in favor of the railroad company.

*Henry, Barbour & Henry,* for appellant.

The amended declaration contains four counts, to the first of which the appellee railroad company interposed the statute of limitation, Code 1892, § 2742, as a plea, and to this the appellant demurred, and the demurrer was by the lower court sustained. We do not care to argue this feature of the case here.

To the second, third and fourth counts in the amended declaration the appellee demurred on the ground that the counts are for alleged slander by an employe of the railroad company, and the counts do not show that the alleged slander was uttered and published with knowledge or approval of the railroad company, or that the same was ever ratified by the appellee.

The count in the amended declaration upon which we most particularly rely, is that which alleges that B. Gilleas, roadmaster of the railroad company for the Louisiana division, and having authority over appellant, maliciously and falsely stated in the office of the appellee in Jackson, Mississippi, in the presence and hearing of others, and in the absence of appellant, that "the old —— of a —— is stealing, and I want him discharged"; whereby appellant's reputation was brought into ill repute.

The authorities cited by appellee in support of the demurrer are, principally, Townsend on Slander, § 265; 18 Am. & Eng. Ency. Law (2d ed.), 1057; and 10 Cyc. 1216. Replying to these authorities we say that the Encyclopedia cited refers to the following cases to support the text, to-wit, *Childs* v. *State Bank,* 17 Mo., 213. Our court in *Williams* v. *Planter's Insurance Co.,* 57 Miss., refused to follow the *Childs case.* Moreover, the Missouri court said, subsequently, that "since the *Childs case* there have been complete changes in the law." *Iron Mountain Bank* v. *Merchants Bank,* 4 Mo. App., 505. Another case cited to support the text of the Encyclopedia is *Hussey* v. *Norfolk, etc., R. R. Co.,* 98 N. C., 34, 2 Am. St. Rep., 312. But this case, instead of supporting the text, holds to the

contrary, as will be seen on casual examination of the same, and, moreover, cites *Williams* v. *Planters' Insurance Co., supra.* Townsend on Slander, sec. 265, relied on by opposing counsel, cites only two authorities for the writer's views. These two cases are *Maloney* v. *Bartley,* 3 Camp., 210 (an English case), and *Hacker* v. *DeCrott,* 15 How. Prac., 104. Neither of these cases in any way sustains the text, as will be apparent from a careful reading of the opinion in each case.

The only pertinent case cited by counsel for appellee, so far as we have been able to ascertain after thorough examination of the case, is *Behre* v. *National. Cash Register Company,* 100 Ga., 214, 27 S. E. Rep., 986; and that case relies upon Townsend on Slander, sec. 265, cited by appellee, without any other authority and without discussion of the proposition or satisfactory reasons for the opinion of the court.

We insist that the question is practically settled in this state by the case of *Brooks* v. *Railroad Company,* 69 Miss., 168, 13 South., 847, and *Williams* v. *Planters' Insurance Company,* 57 Miss., 579, and by *Richberger* v. *Express Company,* 73 Miss., 161, 18 South., 922.

As regards our contention that the second, third and fourth counts of the amended declaration constitute good causes of action, we refer to the following authorities:

*Sawyer* v. *Norfolk S. R. Company* (N. C.), 54 S. E. Rep., 793, where the court said: "There is some authority for the proposition that a corporation cannot be held civilly liable for slander. And it has been also held that they are only so responsible when they expressly uttered the very words which form the basis of the charge. But it is now well established that private corporations under certain circumstances will be held liable for torts, both negligent and malicious, upon the part of their employes and servants."

*Hussey* v. *Railroad Company,* 2 Am. St. Rep., 312. This was a case in which the complaint charged that the defendant company had maliciously slandered the plaintiff. There was a

demurrer which admitted that the agent of the railroad company had uttered the words, and the appellate court held, on the demurrer, that the defendant was liable.

*Peterson* v. *W. U. Telegraph Company,* 74 Am. St. Rep., 502. This case holds that a corporation will be held liable for the malicious libeling of a person. And to the same effect is *Hoboken, etc., R. R. Co.* v. *Kahn,* 59 Am. St. Rep., 286, and notes.

*Fogg* v. *Boston, etc., R. R. Co.,* 12 Am. St. Rep., 586. This was a case where the defendant's ticket agent posted a notice in the defendant's ticket office defamatory of the plaintiff. Held, that the defendant company was liable even though the defendant's agent was acting in excess of his authority.

*Honey Mfg. Co.* v. *Perkins,* 43 N. W., 1075. This case holds that a partnership is liable for a slander uttered by one of the members when about the firm's business. And it is held, in *Glass Co.* v. *Pault,* 13 South. Rep., 800, that the liability of a partnership will be the same as that of a corporation, as regards torts.

*Palmeri* v. *Manhattan R. R. Co.,* 16 L. R. A., 136. This was a case where the plaintiff was publicly slandered by the defendant's ticket agent in its office, and detained in the office. The defendant was held liable both for slander and for false imprisonment.

*Bacon* v. *Michigan Central Railroad Co.,* 21 N. W. 324, 54 Am. St. Rep., 372, is directly in point. The plaintiff was discharged by the defendant from employment in its service, and notice was sent by the roadmaster of the defendant to the other officers of the company, assigning as reason of the discharge, the single word, "stealing." This was held to be sufficient publication.

The amended declaration states that the slanderous words were spoken by the agent of the railroad company while acting in the scope of his employment and in the performance of his principal's duties. The lower court should have held that

on the pleadings the railroad company was liable for damages. *Jordan* v. *A. G. S. R. R. Company,* 74 Ala., 85, 49 Am. Rep., 800 ; *Richberger* v. *Express Company,* 73 Miss., 161, 18 South. Rep., 922, 31 L. R. A., 390.

*Mayes & Longstreet,* and *Chas. N. Burch,* for appellee.

In considering the issues of law here concerned, it is important to have clearly in mind the facts and the dates shown in the pleadings. The appellant filed his declaration on June 1, 1906, for recovery of damages from the appellee on account of certain alleged slanders averred by the declaration to have been uttered and published about him by one Sullivan, and others, employes of the appellee. The first count of this declaration alleged that Sullivan, in the employ of appellee, maliciously and falsely said, in the absence of appellant, and in the presence of several persons, concerning appellant, "I caught one man, the other day" ; thereby meaning that appellant, whose duty it was to keep an account of work done by employes on the section force of which appellant was foreman in appellee's employ, had made false and dishonest entries in his accounts of the work of the employes on the force, and that by the slanderous statement mentioned appellant's reputation had been injured. The second count alleged that shortly after the time mentioned in the first count one Gilleas, an employe of the appellee, acting within the scope of his employment, stated to different persons, in appellant's absence, that appellant was guilty of the charge made against him by Sullivan, to the injury of appellant's reputation.

It was patent that this declaration charged no legal offense against the railroad company, the only averment being that, in one instance, an employe of appellee said, "I caught one man, the other day," and, in the other instance, another employe of appellee said that the charge made by Sullivan against Rivers was true. There was nothing in the body of the declaration to indicate how and of what Sullivan had "caught him,"

or of what charge if any the other employe had said appellant was guilty.  There was nothing in the words themselves that was defamatory or slanderous, for they charged no criminal or injurious offense against the appellant.  It was so obvious that the declaration charged no offense specifically against the railroad company on which recovery could be had, that the appellant filed an amended declaration before any defense was attempted by appellee.

The amended declaration was filed October 31, 1906, practically four months after the plaintiff filed his first or original declaration.  And this amended declaration was thus filed over a year from June, 1905, the date of the alleged libelous and slanderous statements shown in the four counts of the amended declaration.

In and by the first count of this amended declaration the appellant complains that the said Sullivan, on the 7th day of June, 1905, addressed a communication to Safford, chief engineer; Gilleas, roadmaster, and Daley, chief time checker, in regard to his investigation of Section No. 2, at Pocahontas, J. R. Rivers, foreman, which appellant avers "constituted a libel upon plaintiff in and about his occupation aforesaid."

By the second count of this amended declaration, appellant complains that the said Sullivan, the time checker of the Louisiana division, had maliciously and falsely stated in the presence of another, that he had caught the plaintiff "stealing and had been compelled to write him up"; "that it was a plain case of stealing, and there was nothing for him to do but to write him up."  It was also averred that when these statements were made, the said Sullivan was acting within the scope of his authority and in and about the business of the appellee as its agent and servant.

By the third count of this amended declaration, it is claimed that one Gilleas, who was then roadmaster of the Louisiana division of the railroad, did maliciously and falsely say in the

office of the appellee at Jackson, Mississippi, in the presence and hearing of another, "The —— of —— is stealing, and I want him discharged."

By the fourth count of the declaration, the plaintiff alleges that on the 7th day of June, 1905, the said Gilleas, roadmaster, who was then and there representing appellee and acting within the scope of his authority, did maliciously and falsely, say in the presence and hearing of another, and of John Maynor, one of the supervisors of appellee, that one Sullivan, time checker, and one Maynor, supervisor, of the appellee over appellant "went over the Yazoo district of the defendant company's road a few days prior to the date aforesaid, and while in and about defendant's business, "caught two men stealing and one of them had been in the service of the company (meaning Rivers, the plaintiff), about twenty years, and that he was section foreman at Pocahontas."

It is charged in each count that the allusions were to appellant, and that he was the person referred to in and by each and that each and all of them brought him into disrepute and caused him distress of mind which produced sickness, ill health, etc.

To this amended declaration, the appellee filed certain special pleas, the first denying that the railroad company wrote or published words set forth in the first count of the declaration; the second plea denying that the words written and published as set forth in the count bear the construction put thereon by Rivers, the appellant, and the third special plea to the first count set up the statue of limitations and averred that the cause of action did not accrue within one year of filing the amended declaration, and that the same is barred by the statute of limitations.

The railroad company demurred to the second, third, and fourth counts of the amended declaration, on the ground "that said counts are for alleged slander by an employé of defendant, and it now here appears in said counts that such alleged slanderous words were uttered and published with the knowledge of

the defendant, or with its approval or consent, or that the same were ever ratified by the defendant."

The court will bear in mind here that in this state of the pleadings, there was a plea setting up the statute of limitations and the statutory bar of one year against the alleged libel based on the letter alleged to have been written by Sullivan on the 7th day of June, 1905; that there was a demurrer to the remaining counts assigning the grounds just recited.

After the filing of these pleas and this demurrer, the appellant, Rivers, by his attorneys, demurred to the special plea setting up the statutory bar of one year.

At the hearing of these demurrers, the court overruled the demurrer to the special plea setting up the statute of limitations, and also at the same time sustained the railroad company's demurrer to the second, third, and fourth counts of the declaration. After the action of the court in overruling River's demurrer and sustaining the railroad company's demurrers, as above explained, the appellant declined to plead further, and judgment final was entered in behalf of the railroad company.

The action of the court below in overruling appellant's demurrer to the special plea setting up the statute of limitations, in bar of recovery on the first count of the declaration, was eminently correct. Code 1906, § 3102, which is a rescript of Code 1892, § 2742, expressly provides, amongst other things, that, "All actions for slanderous words concerning the persons or title, and for libel, shall be commenced within one year next after the cause of such action accrued and not after." The cause of action averred in the first count of the second or amended declaration, consists in the alleged libel growing out of the letter from Sullivan, the time checker, to his superior officers. The amended declaration alleges that this libel was perpetrated on the 7th day of June, 1905, and the amended declaration was not filed until October 31, 1906, a period of fifteen months after the date plaintiff alleged the libel was committed.

Learned counsel for appellant will undoubtedly insist that

the filing of the first or original declaration on June 2, 1906, was a commencement by Rivers of his suit against the railroad company, and that the charges made in the amended declaration will relate back to the date of the institution of the suit, and that as this was within the twelve months, the charges for the first time propounded by the amendment will be saved from the bar of the operation of the statute.   To this proposition, we beg to enter our most earnest dissent.   Under no rule of pleading can the charge made by the first count in the amended declaration, where for the first time in the whole proceedings a charge of libel is made, be related back to the original declaration.   We beg to call the attention of the court especially to the fact that in this first declaration there is no pretense of any charge except that of *slander,* slander by Sullivan, while the charge made in the first count of the amended declaration is not a charge of slander founded on alleged spoken words, but is a distinct and separate charge of *libel* founded on a writing which for the first time is mentioned in the amended declaration.   The existence of such a writing is not even hinted at in the original declaration.   The charge of libel is not even suggested in that declaration.   It is a new, original, distinctive cause of action propounded for the first time at the time of the filing of the amended declaration.

The charge made in this first count of the amended declaration, by no sort of implication, is even remotely contained in or hinted at in a single word or phrase of the original declaration.   It is totally unlike in character, and in large part controlled by different rules and principles.   It would be difficult to conceive of two rights of action more entirely dissimilar than the alleged rights set out in the original declaration, and that founded on the writing referred to in the first count of the amended declaration.   We have examined many authorities, some of which we cite below, bearing on the proposition that a new right of action cannot be so asserted by an amendment to an original bill in chancery or to a declaration

at law, so as to avoid the application of the statute of limitations when the new cause of action set up is essentially a new right for the first time asserted by the amendment.   We find no better authority for the proposition that the statute of limitations may be pleaded and will be effective against a new right of action brought forward in this way by an amendment to bill or declaration, than is found in the decision of our own court in the case of *Cox* v. *American Freehold & Land Mortgage Co.,* 88 Miss., 89, 40 So. Rep., 741.   The decision of our court in the case just cited is but a succinct statement of the general rule deducible from an almost unbroken line of Mississippi authorities.   These are compiled in the learned opinion in the case.

In the case of *Cooper* v. *Allen,* 57 Miss., 696, the bill was to foreclose a mortgage for plantation supplies, and afterwards it was amended so as to assert a lien under the married woman's statute which makes the husband the statutory agent, and the court held that the right attempted to be set up by the amendment, was barred.

In *Dinkins* v. *Bowers,* 49 Miss., 219, though the action was by a mechanic on account to enforce his claims though in the form of a purely personal action and when the mechanic attempted to amend by alleging a mechanic's lien based on the facts set out in the declaration, the court held that the assertion of the mechanic's lien was barred because it had not been set up within six months after the maturity of the account.

And so, also, in the case in the supreme court of the United States, of *Railway Co.* v. *Weyler,* 158 U. S., 285 (39 L. Ed., 983), though the action was based upon the general law of master and servant, and was for the recovery of damages for personal injury, yet when the plaintiff sought to claim under the statute of another state by an amendment setting up that statute, the court held that his right was barred because he had not asserted his right within the time prescribed by that statute.

And in a recent case of *Nelson* v. *Bank of Montgomery*

(Ala.), 36 South. Rep., 707, the declaration claimed originally for money had and received, but afterwards plaintiff filed an amendment claiming for goods, wares and merchandise sold; and yet the court held that this claim could not be brought forward by amendment so as to avoid the statute of limitations applicable to statutes for goods, wares and merchandise sold and delivered.

We submit the argument on this proposition with these authorities, deeming it unnecessary to argue to this court that a charge of libel founded on a writing can in no wise be contained within a charge of slander based on alleged spoken words of entirely different import.

We now come to the question whether or not the demurrer of the appellee company to the second, third and fourth counts in the amended declaration was good and sufficient in law.

This demurrer set up as the substantial objection to the several counts, that nowhere in those counts was it charged that the alleged slanderous words spoken of the appellant, Rivers, were used by an employe of the corporation authorized to speak them on behalf of the corporation, and that it was not averred that the corporation had knowledge of such words or had ever ratified or approved the language of the employe. We respectfully submit to the court that a close analysis of these several counts will demonstrate that they are fatally insufficient in legal averment. Pretermitting, for the time being, the question whether or not a corporation is liable for the slander by an employe of a third person, we can say that even if the principle be conceded (which it is not), this amended declaration is insufficient in necessary averment.

In the first place, we take it as a settled rule that there is a difference between the rules and principles controlling in libel against corporations and those in alleged slander. This difference has been recognized by our own court in the case of *Railway* v. *Brooks,* 69 Miss., 168, 13 South., 847, wherein Cooper, Justice, says (referring to an instruction): "It told the jury

that the circumstances created a qualified privilege, and that the defendant could only be liable upon proof of malice, or in the absence of honest belief in the truth of the statements contained in the letter.   In other words, that the defendant was not liable if its servant in making reply to the letter of the attorneys kept himself within the privilege of the occasion, but was liable if he took advantage of the opportunity afforded by the occasion to maliciously libel him, or to write concerning him libelous matter which he did not believe to be true."

The rule is even more rigid when applied to a charge of slander.   When liability for this offense is charged against a corporation under the doctrine of *respondeat superior,* it must be distinctly averred that the slanderous words were uttered by the employe in the course of his discharge of duty or transaction of business, that they were spoken maliciously and that the servant speaking them concerning another servant, knew the charges were not true.   In other words, the speaking of the words must have been part of the authorized duty of the servant uttering them.

This court will readily perceive, as many courts have, the great hardship that would be visited upon a corporation if it should be broadly declared that a corporation or the master is liable for damages on account of alleged slanderous words spoken by one employe against another.

Many of the subordinate railway agents and employes are rough people, untrained in the amenities of life, and not observing the rules of decorous speech in conversation one with the other, nor in allusions to one another.   This very fact is evidenced by the alleged slanderous statements set forth in the amended declaration.   The courts hold, where it is patent the alleged slanderous statement is a mere individual expression of opinion on the part of a subordinate servant, made without the knowledge or approval of the corporation, that the expressions are personal expressions of the servant uttering them, for which he may be individually liable, but for which there is no liability

on the principal.   The consideration of the alleged slanders set forth in this amended declaration would show that it was utterly impossible for the railroad company to ever have knowledge of the expressions used by these employes about one another, and it would be a rule which would open the door wide to fraud and connivance amongst employes to mulct corporations if it should ever be held to be the rule of law that a corporation is bound for every improper remark made by an employe concerning another when the speaking of words is not within the authority, express or implied, of the servant, and when the words bear on their very face the character of mere personal and individual opinion.

It was for a long time thought that a corporation could not in any case be held civilly liable for a slander.   But at the present time the better doctrine would seem to be that, while a corporation is not ordinarily liable for a slander uttered by one of its agents, even though in uttering such words the speaker was acting for the benefit of the corporation and within the scope of the duties of the agency, the corporation may be held liable where it affirmatively appears that the agent was expressly directed or authorized by the corporation to speak the words in question.   18 Am. & Eng. Ency. Law (2d ed.), 1057.

Where a plaintiff desires employment with defendant railroad company to look after trucking when of his own accord the defendant superintendent, who had charge of employing persons for such work, and the superintendent in addition to stating that he did not want him, slandered him in regard to his former work for the company, defendant is not liable for the slander, there having been no such relation between them that the defendant owed plaintiff any special duty, and slandering plaintiff not being within the implied authority of the superintendent.   *Sawyer* v. *Norfolk & S. R. Co.,* 54 S. E. Rep., 793, and see 10 Cyc., 1216; *Behre* v. *Cash Register Co.,* 27 S. E. Rep., 986; Townsend on Slander, § 265.

We, therefore, contend that the declaration in this case is

fatally defective, on the demurrer now under consideration, for these reasons:

1. Because a corporation cannot be made liable for slander uttered by an employe unless the words were uttered in the course of business and unless the employe was authorized to speak the words in and about the transaction, these or like words.

2. Because the averment is fatally insufficient in that it does not aver that the corporation had knowledge of the words and authorized or ratified them.

3. Because the declaration is fatally insufficient in that it does not aver that the employe who used the words did not use them in the course of duty which covered the expressions with a general or qualified privilege.

4. Because the allegations are fatally insufficient because they do not aver that the employe, who is alleged to have used the words, did not know or believe them to be true.

5. Because the declaration does not aver that the words were uttered by the employes outside of the line of duty or to third persons whose duties did not include the duty of having a discussion concerning the circumstances complained of. In other words, we contend that while there is an allusion to third person here in whose presence some of the words were alleged to have been uttered, there is no allegation that this person was not an employe of the company charged with a duty in and about the transaction in hand. An action for slander and libel is in the nature of a criminal prosecution. It is *quasi*-criminal procedure even when only punitory damages are sought, and by all the rules controlling in such actions, the pleadings are construed most strongly against the pleader, and the pleader must negative in the declaration every allegation which, if true, would absolve the corporation from liability.

WHITFIELD, C. J., delivered the opinion of the court.

The action of the court below in overruling the demurrer of

the plaintiff to the defendant's third plea is affirmed; but the court below erred in sustaining the demurrer of the defendant to the second, third, and fourth counts of the amended declaration. The doctrine has long been exploded that a corporation is not liable for slander because, as it was ridiculously expressed, there could be "no agency to slander." The true doctrine is that set forth in Clark & Marshall on Corporations, vol. 1, pp. 627–629: "It has been said that corporations cannot be liable for slander or oral defamation by officers or agents, as 'there can be no agency to slander'; and the opinion has also been expressed that a corporation, because of its impersonal nature, cannot commit torts involving elements of malice, since, to support an action for tort, 'it must be shown that the defendant was actuated by motive in his mind, and a corporation has no mind.' This reasoning, however, is unsound. The corporation, it is true, has no mind. It cannot itself entertain malice; but its officers and agents may, and their mental attitude, including the malice, may, like their consent to contract, or their physical acts, be imputed to the corporation. It is well settled, therefore, for this reason, that corporations might, to same· extent as natural principals, be liable for malicious wrongs of their officers or agents, if committed in a transaction which is in the scope of their authority. Thus it has been held that corporations to the same extent as individuals, are liable for action of libel, or, it seems, for slander, or in action for malicious prosecution, or false arrest, or imprisonment. While it is true that a corporation cannot itself speak, and therefore it cannot itself slander, neither can a corporation itself make false representations of its agents. For the same reason, it may be liable for slander by its agents." The same principle is announced by this court in the case of *Williams v. Planters' Insurance Co.,* 57 Miss., 759, 34 Am. Rep. 494. Lord Mansfield very accurately said in the case of *Maloney v. Bartlett,* 3 Camp., 210, that "there appeared to be no well-founded distinction between written and unwritten slander," and that "the reasons given

in the books for such a distinction were very insufficient." He further said that the first reason given was that by writing the scandal became more diffused, but that this was casual, for words might be spoken under circumstances which would give them much more publicity and render them much more injurious than if they were committed to paper and shown to third persons. He further said that "as to another reason, that the writing of scandal shows more malice against the defendant, the true foundation of civil actions was some damage sustained by the plaintiff, not the malice which actuated the defendant." This great judge was eminently correct in holding that no sound distinction can be drawn between the liability for libel and the liability for slander. It is further to be observed that the case of *Childs* v. *State Bank,* 17 Mo., 213, was disapproved in the case of *Williams* v. *Planters' Ins. Co., supra,* and in the case of *Iron Mountain Bank* v. *Merchants' Bank,* 4 Mo. App., 505, it was shown that since the *Childs case* there had been a complete change in the law on this subject in Missouri and elsewhere. It is very correctly pointed out in the brief of the learned counsel for appellant that 18 Am. & Eng. Ency. of Law (2d ed.), p. 1057, cites Townsend on Slander, and that Townsend on Slander cites the case we have just referred to of *Maloney* v. *Bartlett,* which, so far as its reasoning is concerned, supports the appellant. The case holding the appellee's view, *Owsley* v. *M. & W. R. R. Co.,* 37 Ala., 560, was overruled by *Jordan* v. *A. G. S. R. R.,* 74 Ala., 85, 49 Am. Rep., 800. We think our own cases of *Railroad* v. *Brooks,* 69 Miss., 185, 13 South., 847, 30 Am. St. Rep., 528; *Williams* v. *Planters' Ins. Co.,* 57 Miss., 579, 34 Am. Rep., 494, and *Richberger* v. *Express Co.,* 73 Miss., 161, 18 South., 922, 31 L. R. A., 390, 55 Am. St. Rep., 522, are decisive in favor of appellant's contention. See also, *Sawyer* v. *Norfolk S. R. Co.* (N. C.), 54 S. E. 793; *Bacon* v. *Mich. Central R. R. Co.,* 21 N. W. 324, 55 N. W., 224, 54 Am. Rep., 372; and *International Co.* v. *Heartt,* 136 Fed., 129, 69 C. C. A., 127.

The test is whether the slanderous words were spoken by the agent of the company while acting within the scope of his employment and in the actual performance of the duties of his principal touching the matter in question, as pointed out in the *Richberger case* above. We have nowhere found a better statement of the true doctrine on this subject than that announced by BRICKELL, C. J., in his masterly opinion in the case of *Jordan* v. *Ala. Great Southern R. R. Co.,* 74 Ala. 85, 49 Am. Rep., 800, cited *supra.* That great judge said: "The idea that a corporation is not liable for a tort involving a malicious intent had origin in the day when it was denounced as soulless, and was an application of the quaint syllogism, ascribed by Lord Coke to Chief Baron Manwood, that 'none can create souls but God, but a corporation is created by the King; therefore a corporation can have no soul.' The current of authority now is that corporations are responsible civilly, the same as natural persons for the torts of their agents committed in the course of their employment, or which are authorized, or subsequently ratified. Ang. & Ames, Corp., secs. 385–389; Morawetz on Private Corporations, secs. 89–96; Cooley on Torts, 119–123; *Southern & N. A. R. Co.* v. *Chappell,* 61 Ala., 527. The immunity from individual liability afforded by corporate organization, the capacity for the concentration and employment of intelligence, energy, and capital, without break or interruption because of changes in membership, has led to the multiplication of corporations, until there is scarcely an object of general concern a corporation is not formed to promote, and to a great extent they have engrossed business in all hazardous enterprises or enterprises requiring the investment and use of large capital. 'With the multiplication of corporations,' said ROGERS, J., in *Bushel* v. *Com. Ins. Co.,* 15 Serg. & R. (Pa.), 176, 'which has been and is taking place to an almost indefinite extent, there has been a corresponding change in the law in relation to them.' And he adds: 'The change in the law has arisen from a change of circumstances—from that silent legis-

lation by the people themselves, which is continually going on in a country such as ours, the more wholesome because it is gradual and wisely adapted to the peculiar situation, wants, and habits of our citizens.' . . . It is the aim and duty of courts to apply principles of the common law, with such modifications as are necessary to adapt them to the changed necessities, varied social conditions, and diversified business and interests of the community. Perhaps, there is not, in the history of the common law, more distinctive evidence of its modifications, of the rejection of its narrow technicalities, than in the adaptation of the legal relation of corporations to a just liability for the acts, omissions, or engagements of the governing body, or its agents or servants employed in the transaction of corporate business. The ancient rule, that they could speak and act only through the common seal, is obsolete; and now they are bound by the like implications and inferences which bind natural persons." Chief Justice BRICKELL then quotes approvingly the following language of Mr. Justice CAMPBELL in the case of *P., W. & B. R. R. Co.* v. *Quigley,* 21 How. (U. S.), 210, 16 L. Ed., 73: "But these agents may infringe the rights of persons who are connected with the corporation, or who are brought into relations of business or intercourse with it. As a necessary correlative to the principle of the exercise of corporate powers and faculties by legal representatives is the recognition of a corporate responsibility for the acts of those representatives. . . . The result of the cases is that for acts done by the agents of a corporation, either *in contractu* or in *delicto,* in the course of its business, and of their employment, the corporation is responsible, as an individual is responsible under similar circumstances." Chief Justice BRICKELL then concludes as follows, citing a great number of authorities: "We have among us, not only purely domestic corporations, but corporations existing by the separate authority of several states, drawn into the daily transaction of business with all classes of the community, holding property of

every species under the protection of the law of the state, compelled to a frequent resort to the courts for prevention or redress of injuries. Foreign corporations, by a liberal comity, here exercise corporate power, transact business, hold and enjoy property. It is by the representation of natural persons that their franchises are exercised, their business transacted, and property acquired. It would not be just, if a natural person suffer wrong from the malicious acts of the representative of a corporation, while within the scope of his employment, for the courts to refuse to look beyond the legal entity to its real and true character, an association or aggregation of natural persons, capable of acting by a corporate name and in continuous succession. This is not unjust to the corporation, for it 'tends to induce greater care and caution in the selection of those who are to be intrusted with corporate affairs.' "

*The demurrer of the defendant to the second, third, and fourth counts of the amended declaration is overruled, the judgment is reversed, and the cause remanded.*