13268

BOLING v. CLINTON COTTON MILLS *ET AL.*

(161 S. E., 195)

14

16

*Messrs. Park, McDonald & Todd,* for Clinton Cotton Mills, appellant,

*Messrs. Blackwell, Sullivan & Wilson* and *Huff & Huff*, for respondents,

November 9, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages on account of alleged slanders of the plaintiff by the corporation defendant acting through its superintendent, the defendant F. W. Gurry.

The appeal is from an order of his Honor, Judge Mauldin, refusing a motion by the defendant for an order requiring the plaintiff to make his complaint more definite and certain

as to each of the several alleged cases of action, by stating the several acts of slander contained in each cause of action, separately, and by declaring the names of the persons to whom they were severally published; and from an order overruling demurrers by the defendants to the several causes of action upon the general ground.

The complaint contains three alleged causes of action, which of necessity will be separately considered:

### The First Cause of Action

The allegations are substantially: That on July 14, 1930, the defendant Gurry, as superintendent of the mill, invited the plaintiff to his office and told him that he had investigated his conduct, and stated that he had been posing as a single man and had been going to Greenwood with two women, naming them, and had had illicit relations with them; that the mill would have them to come to Clinton and make an affidavit that the charge was true; that he caused the women to appear before other officials of the mill and make such affidavit; that the language and conduct of the defendant Gurry were understood by those present as charging the plaintiff with the crime of adultery; that the slanderous words were spoken of the plaintiff and published to divers people with malicious intent to injure the plaintiff; and that as a consequence of which he had suffered damage to the amount of $25,000.00:

The defendants, conceiving that there were two separate and distinct causes of action set forth in the first cause of action, moved that the complaint be made more definite and certain by stating them separately.

The allegations that Gurry had made the charge of adultery to the plaintiff alone, of course, does not make out a case of slander; it had to be published to others than the plaintiff; the statement that the mill had caused the women to come to Clinton and verify the charge by affidavit was not actionable as slander, for the

reasons that it was made to the plaintiff alone, and that the act itself was in no sense a slander; it might have been libel but not slander; the statement that the charge of adultery was made to "divers people" other than the plaintiff did constitute a slander, and it is the only statement in the first cause of action that does; the complaint, as to the first alleged cause of action, therefore contains only this charge of slander, and was not the proper subject of the motion to make more definite and certain by stating causes of action separately.

In reference to the alleged publication to divers other persons, the defendants made a motion to require the plaintiff to give the names of such persons.

In 17 R. C. L., 388, § 139, it is said: "Likewise the names of the persons to whom or in whose presence a slanderous statement was made should be stated in the complaint, and the failure to do so is ground for a bill of particulars."

This is in line with the principle that the defendant is entitled to all of the information necessary for his defense.

The defendants also demurred to the first cause of action upon the ground that it did not state facts sufficient to constitute a cause of action. Except as modified by the foregoing statement, upon compliance by the plaintiff with the requirement that he state the persons to whom the alleged slanderous statements were made, the first cause of action is not subject to demurrer.

## THE SECOND CAUSE OF ACTION

It is alleged that Gurry, while acting as agent of the mill, received plaintiff and his board of stewards on the occasion mentioned; that he was interviewed by this group or committee, and was asked if he had not made the statement that the plaintiff had been posing as a single man and had been having illicit relations with two women at Greenwood; that Gurry answered that he had made the statement.

The defendants demurred to this cause of action upon the general ground, which in our opinion should have been sustained. It is a sound principle of law that a person cannot invite or provoke another to make a slanderous charge against him, and then sue such person for damages on account of such charge.

In Newell on Slander and Libel, p. 620, it is said: "If the only publication that can be proved is one made by the defendant in answer to an application from the plaintiff, or some agent of the plaintiff, demanding explanation, such answer, if fair and relevant will be held privileged; for the plaintiff brought it on himself." See *Beeler v. Jackson,* 64 Md., 589, 2 A., 916; *Melcher v. Beeler,* 48 Colo., 233, 110 P., 181, 139 Am. St. Rep., 273.

In *Fonville v. McNease,* Dud., 303, 31 Am. Dec., 556, it is said that, if in answer to such an inquiry the defendant does no more than acknowledge that he uttered the words, no action can be brought for their acknowledgment; the party injured must sue for the words previously spoken and use the acknowledgment as proof that those words had been spoken. There is no such publication as will support an action where the defamatory matter is invited or procured by the plaintiff or by a person acting for him in the matter. See, also, 18 A. & E. Enc. L., 1018; 36 C. J., 1230, 17 R. C. L., 321.

## The Third Cause of Action

The allegation substantially is that Gurry, as agent of the cotton mills, met divers and sundry people on the streets of the mill community, and published defamatory statements in reference to the plaintiff, saying, "That man would not keep his word for twenty-four hours," and to one S. W. Hudson, "If you knew what I know on the preacher you would not be sticking by him."

The defendants, conceiving that there were two separate and distinct causes of action set forth in the third cause of action, moved that the complaint be made more definite and certain by stating them separately.

It is apparent that the conception of the defendants is correct; there is an allegation of a defamatory charge against the plaintiff communicated to divers persons on the streets of the mill village and a separate and distinct charge communicated to one S. W. Hudson. Assuming that they could be joined in the same complaint, *Bateman v. Wymojo,* 155 S. C., 388, 152 S. E., 675, they certainly should be separately stated. The motion of the defendants in this regard should therefore have been granted.

"The general rule is that where two or more causes of action are set forth in the same complaint, without being separately stated, the defendant has the right to require the plaintiff to make the complaint more definite and certain by separately setting forth the several causes of action. *Lewis v. Hinson,* 64 S. C., 571, 43 S. E., 15; *Marion v. Charleston,* 68 S. C., 257, 47 S. E., 140; Code § 218, Pom. Rem. (4th Ed.), § 235, 345, Code, § 210; *Hellams v. Switzer,* 24 S. C., 39; *Westlake v. Farrow,* 34 S. C., 270, 13 S. E., 469." *Matheson v. Am. T. & T. Co.,* 125 S. C., 297, 118 S. E., 617, 618.

In reference to the alleged publication of the defamation to divers persons on the streets of the mill village, the defendants made a motion to require the plaintiff to give the names of such persons; for the reasons stated above, the motion should have been granted.

The defendant corporation also entered a demurrer to the third cause of action upon the general ground, the specifications of which are: (1) That the defendant is not responsible for the alleged defamatory words, in that they are alleged to have been made by Gurry in his individual capacity, and not as an agent of the defendant; and (2) that, as they do not impute to the plaintiff the commission of a crime, they are not actionable *per se,* and no special damages are alleged.

It is true that it is alleged that the defamatory remarks were made by Gurry "while acting as agent and servant of the defendant Clinton Cotton Mills

and while in his line of duty"; this, however, is nothing more than the statement of a legal conclusion, with no facts stated from which such conclusion could legitimately be drawn. Something more is required than this to fix liability upon the corporation for a slander by one of its agents; it must be shown, and therefore alleged, that in the particular circumstances of the slander the agent was acting for the corporation.

It is readily conceivable that the statement that the slander was uttered while the defendant Gurry was acting as agent and servant of the defendant corporation and while in the line of his duty, that he was discharging a duty he owed his employer that in no wise concerned the plaintiff, for instance, that he was on his way to the post office to get the mail for the mill, or that he was out on some other business for the mill, looking after its property, seeking employees or performing some other function of his office, and yet in no wise engaged in any matter that concerned the plaintiff, or that he was engaged in some private personal business of his own.

It has been held by this Court that a corporation is liable in damages for the slander of another by one of its agents; but, the liability being exceptional, its limitations are carefully and clearly defined; it must appear, not only that the defamer was an agent of the corporation, but that at the time he was engaged in a matter that concerned the corporation. It is a familiar principle that what is essential to be proved is essential to be alleged.

In *Hypes v. R. Co.*, 82 S. C., 315, 64 S. E., 395, 21 L. R. A. (N. S.), 873, 17 Ann. Cas., 620, it was held, quoting syllabus: "A corporation is liable for slander of one of its employees by another in reference to a matter growing out of such contract relation, the matter being one within the duty of the slandering employee to adjust, whether the corporation subsequently ratified the slanderous act of its employee or not."

In the case of *Hypes v. R. Co., supra,* citing *Sawyer v. R. Co.,* 142 N. C., 1, 54 S. E., 793, 115 Am. St. Rep., 716, 9 Ann. Cas., 440, it is said: "In that case the Court was unanimous in holding that a corporation may be liable for slander committed by its agent, and that the test of liability depended upon the question whether injury was committed by the authority of the master expressly conferred, or fairly implied from the nature of the employment and the duties incident thereto."

In *International Text-Book Co. v. Heartt* (C. C. A.), 136 F., 129, 132, it was held that the defendant was not liable where the slander was uttered by the agent after he had left plaintiff's premises and gone to another locality, where he was not engaged in the performance of any duty under the terms of his employment.

In *Courtney v. Express Co.,* 120 S. C., 511, 113 S. E., 332, 334, 24 A. L. R., 128, the Court held that a corporation is liable for slander under the same circumstances as would make it liable for any other tort; that the servant must have been at the time engaged in the discharge of his duties and acting within the principal scope of his employment. The Court said: "In order to hold the master liable for the tort of his servant, the servant must have been at the time engaged in the discharge of duties intrusted to him in reference to the particular matter in hand and acting within the apparent scope of his employment."

The Court also said, quoting from a *Mississippi case* (*Rivers v. Yazoo & M. V. R. Co.,* 90 Miss., 196, 43 So., 471, 9 L. R. A. [N. S.], 931): "A corporation is liable for slander spoken by its agent, while acting within the scope of his employment and in the actual performance of the duties of the corporation touching the matter in question."

"The reason the master is liable for the act of the servant at all is because the servant is acting in that matter in the master's stead and for him." *Sullivan v. Ry. Co.,* 115 Ky., 447, 74 S. W., 171, 103 Am. St. Rep., 330.

"In order to hold a corporation liable for the torts of any of its agents, the act in question must be performed in the course and within the scope of the agent's employment in the business of the principal." *Courtney v. Express Co., supra.*

In the *Courtney case* the Court quotes with approval the following test from 26 Cyc., 1526, where it is said: "The test is not of the character of the act, nor whether it was done during the existence of the servant's employment, but whether the injury complained of was committed by the authority of the master expressly conferred or fairly implied in the nature of the employment and the duties incident to it." See, also 5 Thomp. Corp. (2d Ed.), § 5441; *Fenskey v. Maryland Co.,* 264 Mo., 154, 174 S. W., 416, Ann Cas., 1917-D, 963; *Vowles v. Yakish,* 191 Iowa, 368, 179 N. W., 117, 13 A. L. R., 1132.

In *McClenaghan v. Brock,* 5 Rich., 17, it is held: "A master is not responsible for the act of his free servant done outside of his employment." *Cobb v. Railroad,* 37 S. C., 200, 15 S. E., 878.

In the *Courtney case* it appears that an agent of the company had been discharged. Park, a route agent of the company, two weeks after the discharge of Courtney, was at the railroad depot at Branchville waiting for a train. He became engaged in conversation with Minnick, a special agent of the company. The conversation was overheard. In the course of the conversation Courtney was alleged to have been slandered by a statement made by Park. The Court held that it was not made to appear that at the time of the utterance of the slander Park was engaged in any business whatever for the company. Second, that it did not appear that Park at the time was engaged in the discharge of any duty committed to him by the company in connection with Courtney's employment or discharge; that at most it was a personal opinion of Park as to a matter that was ended, with which he at that time had absolutely no connection; that it could

not be said that the company had intrusted him with any duty in connection with it, and although he was at the depot engaged in some business for the company, his wrongful act could not be imputed to the company, unless that business was connected with the subject matter of the alleged slander.

The case of *Switzer v. American Railway Express Co.,* 119 S. C., 237, 112 S. E., 110, 26 A. L. R., 819, is quite different from the *Courtney case* and the case at bar. In that case the agent of the company who committed the slander was at the time engaged upon business for the company touching Switzer, who was slandered, and in which he was interested. It also appeared that other persons were present. It was held that the occasion was not privileged and that there was a sufficient publication.

In the case of *Lee v. McCrory,* 117 S. C., 236, 109 S. E., 111, where a young woman was accused of stealing by the manager of the store where she was employed, the corporation was held liable on the theory that the slander was published by the manager in the discharge of his duties as such in respect to business of the corporation directly concerning the plaintiff. This is a very different case from that at bar.

The case of *Mann v. Life & Casualty Co.,* 132 S. C., 193, 129 S. E., 79, announces the same doctrine. Here the corporation was held liable for slander by its servant, while discharging duties intrusted to him, in reference to the particular matter in hand, and while acting within the scope of his employment. The facts show that this case is entirely different from the case before the Court.

The case of *Jenkins v. Southern R.,* 130 S. C., 180, 125 S. E., 912, is also quite different from the case at bar. There the slander was spoken and published in the direct course of the servant's employment.

The principle is undoubtedly sound that an agent may commit a tort while engaged in the business delegated to him, within the scope of his agency, for

which the principal will be liable in damages. *Goble v. Express Co.*, 124 S. C., 19, 115 S. E., 900.

The pivotal question in this connection is whether the allegation that at the time of the defamation the agent was "acting as agent and servant of the defendant Clinton Cotton Mills, and while in the line of his duty," is a sufficient allegation that he was acting for the corporation and not as an individual.

In the case of *Goble v. Express Company*, 124 S. C., 19, 115 S. E., 900, 904, a distinction is drawn between the liability of an agent to a third person in matters of contract and his liability in matters of tort, it being held that in the first the principal is liable where the agent has acted within the apparent scope of his authority, while in matters of tort the act must have been committed within the actual scope. "Hence a principal cannot be held liable in damages for the tort of his agent unless the agent was at the time acting within the actual scope of his agency."

In *Burbage v. Curry*, 127 S. C., 349, 121 S. E., 267, 268, the Court said, citing the *Goble case:* "While it is true that before a principal can be held responsible for the tort of another who is alleged to have been his agent, it must be made to appear that such person was his agent, and that the tort was committed while the agent was engaged, not simply within the apparent, but within the actual scope of the agency."

It seems clear, therefore, that the fact of actual scope of the agent's authority as such is a most essential element in fixing the liability of the principal for the tort of the agent, and, being so, it is an essential element in the pleading.

In *Vowles v. Yakish*, 191 Iowa, 368, 179 N. W., 117, 118, 13 A. L. R., 1132, the Court said: "The test generally applied by the cases is: (a) Was the person who uttered the slanderous words an authorized agent of the corporation? (b) If so, was he at the time acting within the scope of his

employment? and (c) was the language charged used in the actual performance of his duties touching the matter in question? * * * The real question here to be determined is: Was the defendant, at the time he uttered the words complained of, acting within the scope of his employment, and in the actual performance of his duties touching the sub-ject-matter of the negotiations or transaction. The mere fact that the defendant Yakish was at the time the agent of the insurance company to adjust the loss, and that the defama-tory words were used during the negotiations, does not establish liability on the part thereof"—Citing *Kane v. Ins. Co.* (200 Mass., 265), 86 N. E., 302; *Crelly v. Tel. Co.* (84 Kan., 19, 113 P., 386), 33 L. R. A. (N. S.), 328; *Dolan v. Hubinger* (109 Iowa, 408), 80 N. W., 514; *Sawyer v. R. Co.* (142 N. C., 1, 54 S. E., 793), 115 Am. St. Rep., 716 (9 Ann. Cas., 440); *Waters-Pierce Co. v. Bridwell* (103 Ark., 345), 147 S. W., 64 (Ann. Cas., 1914-B, 837).

So far from alleging facts showing that the alleged def-amation was within the actual scope of the agent's author-ity, the complaint in every line shows that it was the outcome of a personal difference between the plaintiff and the super-intendent which arose out of a public excoriation of certain practices of some of the employees of the mill, resented by the superintendent, a matter with which the corporation was not concerned.

In the opinion of the writer, the demurrer of the corporation to the third cause of action should have been sustained upon this ground; but a majority of the Court are of the opinion that the agency of Gurry for the defendant company in making the alleged defamatory statements regarding the plaintiff is sufficiently alleged, the existence of such agency, of course, being a matter for proof at the trial; their conclusion is that the demurrer was properly overruled by the Circuit Judge, and it is accordingly so adjudged.

Both defendants demurred to the third cause of action upon the ground that the alleged defamation did not impute to the plaintiff a criminal offense; that they are not actionable *per se;* and, there being no allegation of special damages, the alleged cause of action should be dismissed.

It is alleged that the plaintiff was a·clergyman, a member of the Methodist Conference, in charge of the Bailey Memorial Church at the Clinton Cotton Mill. In order for him to be successful in his work as such, it was absolutely necessary that he maintain a clean reputation. The language, "That man would not keep his word for twenty-four hours," alleged to have been spoken of him by the defendant Gurry, the superintendent of the defendant mill, contained a charge which, if true, would render him altogether unfit to be the minister of a congregation, and was calculated to expose him to ridicule and scorn as a clergyman and to damage him in his profession.

In 36 C. J., 1170, it is said: "Oral imputations of falsehood are not actionable *per se* unless they charge a crime or affect one in his business or profession."

In view of the fact that the natural effect of the charge of falsehood to the minister was calculated to expose him to public hatred, contempt, ridicule, aversion, or disgrace, to induce an evil opinion of him in the minds of right-thinking persons, to deprive him of that friendly intercourse and society, and calculated to seriously affect·his usefulness in his profession as a minister, the statement alleged was actionable *per se;* the demurrer of each of the defendants upon the ground stated was therefore properly overruled.

The judgment of this Court is that the order appealed from be modified as herein indicated, and that the case be remanded to the Circuit Court, with leave to the plaintiff to apply for an order amending the complaint so far as may be consistent with the conclusions herein announced.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

MR. JUSTICE CARTER concurs in result.

MR. JUSTICE STABLER (concurring) : I am fully satisfied, from a careful consideration of the entire third cause of action, that the plaintiff sufficiently pleaded that the defendant Gurry, in making the alleged defamatory statements regarding him, was acting as the agent of the defendant company. Let the complaint be reported.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER concur.