JAMES J. KANE *vs.* BOSTON MUTUAL LIFE INSURANCE
COMPANY.

Essex.   November 5, 1908. — November 25, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Libel and Slander.   Agency*, Scope of employment.   *Insurance.   Corporation.*

At the trial of an action of tort against an insurance company to recover for slanders alleged to have been published concerning the plaintiff, an agent for another insurance company, by employees of the defendant whose duty it was to solicit business, the plaintiff offered to prove that slanderous words were published as alleged on October 2 and 10, that the plaintiff consulted an attorney at law who on October 29 and November 5 wrote to the " superintendent of agencies " of the defendant, complaining on the plaintiff's behalf; that the superintendent replied asking for further details and stating that such methods were contrary to express orders of the defendant and that the defendant tried to avoid " such things " as much as possible ; that, at the suggestion of the

superintendent, on November 9 one who had charge for the defendant of the agents of the district in which the plaintiff did business interviewed the plaintiff's attorney and said he would report to the superintendent; that early in December the plaintiff's attorney had a conversation with the defendant's superintendent of agencies in which the latter told the attorney that he could do nothing for the plaintiff in the matter, that he "had a thousand cases like this one of [the plaintiff] in his office if he wanted to push them "; that further slanders of the same nature afterwards were published by the defendant's employees on December 19 and January 1, 3, 8 and 10; and that because of the slanderous statements the plaintiff had lost business which the defendant had got the benefit of. The presiding judge, on the plaintiff's offer of proof, directed a verdict for the defendant. *Held,* that the verdict was directed rightly, since the jury would not have been warranted, from the evidence offered, in finding that the persons who published the slanders had any actual authority from the defendant to do so or acted with its knowledge, or that their acts were ratified by the defendant, nor did the offer include any evidence tending to show that the agents of the defendant, in publishing the slanders, acted within the scope of their employment as soliciting agents.

Tort for slander. Writ in the Superior Court for the County of Essex dated April 20, 1907.

At the trial, which was before *Sanderson*, J., the plaintiff offered to prove the following facts:

That he was an employee of the Columbian National Life Insurance Company previous to September, 1906, and continued in such employ until after the last date mentioned in the plaintiff's declaration, and had been earning about $12 per week, with a varying commission in addition; that three employees of the defendant, whose business was that of soliciting insurance for the defendant, severally published on October 2 and 10, November 1 and December 19, 1906, and upon January 1, 3, 8 and 10, 1907, various oral statements to the effect that the plaintiff was a drunkard, a " rag picker," and dishonest in his business; that about October 22, 1906, the plaintiff consulted his attorney, S. F. Whalen, Esquire, of Gloucester, who thereupon wrote two letters, one to the defendant direct and the other to one Bradley, the superintendent of agencies of the defendant, dated respectively October 29 and November 5, 1906, setting forth the plaintiff's alleged grievance against the defendant and suggesting a conference before proceedings were instituted; that Bradley wrote Mr. Whalen on October 30, 1906, asking for further details and stating, " It is strictly against the order of our home office for any agent to use methods of this kind in obtaining business," and also on November 7, 1906, wrote again,

stating his regret that he could not come to Mr. Whalen's office but suggesting that one King would call in his stead, and saying, " This is one of the things that we try to avoid all it is possible to do so, and we will co-operate with you in this matter " ; that on November 8 or 9, King, who was the defendant's superintendent of agencies for the district which included Gloucester, called on Mr. Whalen at his office, and Mr. Whalen called his attention to the slanderous statements made by the agents of the defendant; that King said he would report to Bradley, and that Whalen' would hear from Bradley; that neither the plaintiff nor his attorney did hear from the defendant thereafter; that early in December, 1906, Whalen called at the office of the defendant, and saw Bradley, and told him that he represented the plaintiff, and came to see him in accordance with the suggestion contained in his (Bradley's) letter of November 7, 1906; that Bradley said that he could not do anything for the plaintiff in this matter, and said that he had a thousand cases like this one of Kane's in his office if he wanted to push them.

The plaintiff further offered to prove that his business diminished after the beginning of the slanderous statements set forth in the declaration, and continued diminishing down to the last date mentioned in the plaintiff's declaration, and that he also suffered mentally by reason of these publications ; also that a part of the business which he, as agent of the Columbian National Life Insurance Company, lost, went to the defendant corporation.

The presiding judge ruled upon the offer of proof that the plaintiff was not entitled to recover, and directed a verdict for the defendant. The plaintiff alleged exceptions.

*J. H. Sisk,* (*R. L. Sisk* with him,) for the plaintiff.

*A. H. Bullock,* (*J. F. Quinn* with him,) for the defendant.

SHELDON, J. It may be assumed that the words alleged to have been uttered by the defendant's agents were spoken of the plaintiff in his business of an insurance solicitor, and that they were actionable. *Lovejoy* v. *Whitcomb,* 174 Mass. 586, 588, and cases cited. But the vital question is whether the defendant corporation can be held responsible for them.

It could not be found that any actual authority had been

given by the defendant to its solicitors to make the slanderous statements, or that they were made with its knowledge; nor did anything in the plaintiff's offer of proof tend to show that there had been any ratification of these wrongful acts. The letters of Bradley, the defendant's superintendent of agencies, show no such ratification; they express disapproval of what had been done by the solicitors. The mere inaction of the defendant and Bradley's refusal to do anything for the plaintiff cannot indicate a ratification of what did not appear to have been done in the name or behalf of the defendant, or with the help of its resources or for its advantage. Nor is there any evidence that Bradley had authority to ratify these acts. The facts offered to be proved fall far short of what appeared in *Fogg* v. *Boston & Lowell Railroad*, 148 Mass. 513, and *White* v. *Apsley Rubber Co.* 194 Mass. 97. Nor would the facts that the plaintiff's business was diminished after the alleged slanders, and that a part of the business which he lost went to the defendant, be enough to show a ratification in the absence of evidence that the defendant knew these facts. The defendant did not knowingly receive the benefit of its agents' misconduct, and cannot be held on that ground to have ratified and adopted such misconduct. We find nothing in the cases cited by the plaintiff to support his contention on this point.

The plaintiff contends further that the defendant can be held on the ground that the slanders were uttered by its agents in the course of their employment, even though they were uttered without any prior authority or subsequent ratification from the defendant. But his offer of proof raises no such issue. That offer, as to this question, was simply to show that three solicitors of insurance employed by the defendant " severally published the various oral statements as set forth in the several counts of the plaintiff's declaration." These counts charge that " the defendant by its agents and servants " uttered the alleged slanders. There was no offer to prove that what was said by either of the three solicitors was said in the course of his employment or while acting in the apparent scope thereof. Everything that they said may have been uttered wholly outside their employment, and without any reference to their employer. As in *Obertoni* v. *Boston & Maine Railroad*, 186 Mass. 481, the mere doing

of the acts cannot authorize the inference that they were done in the course of the employment. *Washington Gas Light Co.* v. *Lansden*, 172 U. S. 534. Manifestly, for such utterances the defendant cannot be held liable.

We do not mean to throw any doubt upon the statement of Lathrop, J., in *Comerford* v. *West End Street Railway*, 164 Mass. 13, 14, that it is at least questionable whether the defendant would have been liable if the utterance of the defamatory words by its agents had been in the course of their employment. *Behre* v. *National Cash Register Co.* 100 Ga. 213. *Singer Manuf. Co.* v. *Taylor*, 150 Ala. 574. *Redditt* v. *Singer Manuf. Co.* 124 N. C. 100. *Hussey* v. *Norfolk Southern Railroad*, 98 N. C. 34. *Dodge* v. *Bradstreet Co.* 59 How. Pr. 104. And see Odgers on Libel & Slander, 265; 10 Cyc. 1216; 18 Am. & Eng. Encyc. of Law, (2d ed.) 1059. It is difficult to say that such a wrong as this could be committed in the agent's service and for the principal's benefit, within the meaning of the rule as stated by Lord Selborne in *Houldsworth* v. *City of Glasgow Bank*, 5 App. Cas. 317, 326, and by Campbell, J., in *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley*, 21 How. 202, 210.

*Exceptions overruled.*