LINDSEY *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered June 6, 1910.

1. LIBEL AND SLANDER—EVIDENCE.—In an action for slander where the plaintiff alleged in his complaint that immediately after the slanderous charge he was discharged from defendant's employment, leaving the inference that the discharge was due to the slanderous charge, it was not error to permit defendant to prove that plaintiff was discharged because of his incivility. (Page 540.)

2. SAME—INSTRUCTION—APPLICABILITY TO ISSUES.—In an action for slander, where plaintiff's reputation was not attacked, it was not error to refuse to charge the jury that it was "alleged and not denied that the plaintiff had the reputation in the community in which he lived of being an upright, honest man, and he had never been charged or suspected of any dishonest practice of any kind whatever; therefore you will accept said allegation as proved." (Page 540.)

3. SAME—MALICE—INSTRUCTIONS.—It was not prejudicial error to instruct the jury in a slander case that "in order for plaintiff to recover it must further appear that the slander was uttered with a malicious intent on the part of the defendant company to injure the plaintiff in his business or social standing," if the court further instructed the jury that "if the defamatory words complained of were wrongfully used, and were used intentionally, without just cause or excuse, or in wanton and reckless disregard of the rights and feelings of the plaintiff, then, in the legal sense, they were maliciously used." (Page 540.)

4. SAME—INVITED ERROR.—The plaintiff in a slander case has no right to complain because the court at defendant's instance instructed the jury that "the presumption is that no language was used or intended to be used to injure plaintiff's reputation in his business or social standing, and this presumption must be overcome by proof," where the plaintiff requested the instruction that "it is true that malicious intent is not to be presumed, but must be proved." (Page 541.)

5. SAME—LIABILITY OF CORPORATION FOR ACTS OF AGENT.—A corporation is not responsible for a slander uttered by one of its agents not within the scope of his employment unless it authorized, approved or ratified the act of the agent in uttering the particular slander. (Page 541.)

Appeal from Drew Circuit Court; *Henry W. Wells,* Judge; affirmed.

*Austin & Danaher* and *Patrick Henry,* for appellant.

Actual malice is not necessary when the words published are actionable *per se.*   122 S. W. 449.   A corporation is liable for slander.   43 So. 471; 1 Clark & Marshall on Corp. pp. 627, 629; 57 Miss. 759; 34 Am. Rep. 494; 37 Ala. 560; 74 Ala. 85; 49 Am. Rep. 800; 69 Miss. 185; 30 Am. St. R. 528; 13 So. 847; 73 Miss. 161; 31 L. R. A. 390; 55 Am. St. R. 522; 18 So. 922; 142 N. C. 1; 54 S. E. 793; 55 Mich. 224; 54 Am. Rep. 372; 21 N. W. 324; 69 C. C. A. 127; 136 Fed. 129; 15 Serg. & R. 176; 61 Ala. 527; 21 How. 210; 62 U. S. 212; 77 Ark. 64.

*W. E. Hemingway, E. B. Kinsworthy, E. A. Bolton* and *James H. Stevenson,* for appellee.

Agency alone is not enough to hold a corporation liable for slander.   Cooley on Torts, § 142, p. 209; 150 Ala. 524.   The plaintiff can not, in the first instance, give evidence of his own good character.   Townshend on Slander & Libel, § 387; Newell on Libel & Slander, § 298; Odgers on Slander & Libel, § 298. A corporation is not liable unless it authorized the words to be spoken.   100 Ga. 213; 59 Ark. 539; 4 Ark. 110; 23 N. J. L. 360; 59 How. Pr. 104; 43 So. 210; 200 Mass. 265; 124 N. C. 100; 39 S. E. 392.

BATTLE, J.   O. J. Lindsey charged the St. Louis, Iron Mountain & Southern Railway Company with slandering him. He alleged in his complaint that he was employed by the defendant as station agent at Monticello, in this State; "that while he was so employed, about 21st day of October, 1907, the defendant, through its agents and servants, negligently, recklessly, wilfully and maliciously slandered him by stating in the presence and hearing of L. H. Edwards, P. T. Hammock and Ed Ahrens that two cars of cotton had been stolen out of the yards of the defendant at Dermott and brought to the station of Monticello, and 14 bales had been unloaded in the depot, and that plaintiff got said cotton; and by asking him what he did with it.   That the servants of defendant who spoke said slanderous words of plaintiff were O. J. Cantley and C. Perman, who were special agents in the employ of defendant for the

purpose of finding said missing cotton, and said charge was made by them in furtherance of the defendant's business, which they were employed to do for the purpose of ascertaining whether plaintiff was the guilty person or had guilty knowledge of the matter, and of inducing him, if guilty, to confess it. That said slanderous words were wholly false, and were spoken maliciously and without probable cause, and plaintiff had not then or since then received said cotton, and had no knowledge concerning it. That thereafter he demanded of defendant that the slanderous charge be retracted, but defendant failed and refused to retract. That immediately after said slanderous charge defendant discharged him from its employ. That previous to that time he had the reputation in the community where he lived of being an upright, honest man, and had never been charged with or suspected of being engaged in any dishonest practice whatever. That said Edwards, Hammock and Ahrens, before whom the slanderous words were uttered, were citizens and residents of Monticello, where plaintiff lived. That by reason of the said slander plaintiff had been damaged, in his business standing and otherwise, in the sum of $10,000, and that, by reason of the wilful, reckless, and malicious conduct of defendant in uttering said slander, defendant became indebted to him in the sum of $20,000 punitive damages." He asked judgment for $30,000.

The defendant answered, and denied that its servants used the slanderous language complained of, or any other language which amounted to charging plaintiff with larceny or any other crime, or that such language was used for the purpose of ascertaining the guilty knowledge of plaintiff with respect to said cotton and of inducing him to confess. It denies that Cantley and Perman had authority to charge any person with having stolen the cotton, or to use any other language which would injure him in his business standing. Defendant had no knowledge of the truth or falsity of the words alleged to have been spoken, further than that the cotton was taken from the yards at Dermott, and had at no time charged plaintiff with having taken it, or being a party to the publication of such a charge. It denies that he demanded that it retract the charge or that it refused to do so. That, never having made or authorized the charge, it had nothing to retract. "That no language was used

toward or about plaintiff calculated to injure him in his reputation, socially or in business circles, or calculated to charge him with a crime, but all that was said was to give him such facts as had been ascertained concerning the loss of the cotton to enlist his assistance in finding it; that all communications made to him were of privileged character, and without intent to injure him and without any suspicion of his guilt. It admits that it discharged him, but denies that it was on account of said cotton being lost, and says it was solely on account of his insubordination to those in authority over him. It denies that he was damaged as alleged in the complaint or in any other sum, and prays to be dismissed."

A jury tried the issues in the case, and returned a verdict in favor of the defendant, and plaintiff appealed.

Both parties adduced evidence for the purpose of proving the allegations of their respective pleadings.

Among other things plaintiff testified in his own behalf that he was discharged from the service of the defendant immediately after he was accused of having or taking the missing fourteen bales of cotton.

The defendant adduced evidence, over the objection of the plaintiff, to prove that he was discharged from its service on account of incivility while acting as its agent.

George M. Parker testified, in behalf of the plaintiff, substantially as follows: "I am a conductor in the employ of the defendant, and in 1907 ran the freight train between McGehee, Arkansas City and Warren, passing through Monticello. There were two crews on that run. Conductor Weed was the other conductor. I know C. Perman, special agent for defendant. In October, 1907, Perman came into the lunch room at McGehee, and said he wanted to talk to me. We went outside, and he asked me if I didn't take two cars of cotton out of the Dermott yards to Monticello about the 15th of October, and if O. J. Lindsey, the agent at Monticello, didn't unload this cotton there. I told him I didn't take the cars over to Monticello, and had no record of handling them. He turned and asked me what I did with the 14 bales of cotton, and I told him I didn't know anything about the cotton at all. He told me if I was mixed up in these 14 bales of cotton I had better get clear and unload on Lindsey. I told him I knew nothing whatever of the cotton.

He said that he wanted to stick Lindsey for the 14 bales of cotton, that they knew where the cotton was, and could lay hands on it, and wanted me to get in the clear."

The court instructed the jury at the request of the plaintiff, in part, as follows:

"1.    A slander is any publication or utterance which accuses a person of a crime punishable by law, or which amounts to a charge of having been guilty of any dishonest business or transaction, the effect of which would be to injure the credit or business standing of the person so slandered.

"8.    In order to award punitive or exemplary damages, it must appear that the slanderous words were spoken of the plaintiff by the defendant through its agent acting within the scope of his employment, with malice.    Malice, as used in this instruction, does not mean that the agent using the alleged slanderous words must have any personal spite, ill-will or hatred of the plaintiff, but means if the defamatory words complained of were wrongfully used, and were used intentionally, without just cause or excuse, or in wanton and reckless disregard of the rights and feelings of the plaintiff, then, in the legal sense, they were maliciously used.

"9.    While it is true that malicious intent is not to be presumed, but must be proved, this proof need not be in the form of direct testimony, but may be shown by circumstantial evidence.    It is for the jury to say, after considering the language of defendant's agent complained of, together with all the circumstances attending its utterance, whether such slanderous words were or were not spoken with malice, either express or legal, as hereinbefore defined."

And refused to instruct as follows:

"2.    You are instructed that it is alleged, and not denied, that the plaintiff had the reputation in the community in which he lived of being an upright, honest man, and he had never been charged or suspected of any dishonest practice of any kind whatever; therefore you will accept said allegation as proved."

And instructed them at the request of the defendant, over the objections of the plaintiff, as follows:

"1.    The court instructs the jury that the burden of proof is on the plaintiff in this case to prove by a clear preponderance of the evidence that the language complained of, as set out in

the complaint, was used and published by the agent or agents of the defendant as alleged, and that such agent was acting under the authority of the defendant and acting within the scope of his employment in using such language, or that the defendant had afterwards ratified the same, and to prove that, as a result ·of such slanderous publication by the agent of defendants, the plaintiff has been damaged in his character and reputation, and it must further appear that the slander was uttered with the malicious intent on the part of the defendant company to injure the plaintiff in his business or social standing.

"2.    The court instructs the jury that, unless it appears to your satisfaction by a fair preponderance of the weight of the testimony after a careful comparison of all the evidence in the case that the language set out in the complaint was uttered or published toward or about the plaintiff by the agent or agents of the defendant, acting within the scope of their authority, you will not be warranted in presuming that any language was used which was detrimental to plaintiff's character or reputation, nor was intended to be used in a slanderous way, but the presumption is that no language was used or intended to be used to injure plaintiff's reputation in his business or social standing, and this presumption must be overcome by proof.

"4.    The court instructs the jury that the liability of a corporation for oral slander uttered by its agents stands upon a different footing than written or published slander, the law ascribing them to the personal malice of the agent rather than to the act performed in the course of his employment and in the .aid of the interest of his employers, and exonerating the company, unless it authorized, ratified or approved the act of the agent in uttering the particular slander complained of, or the agent was acting within the scope of his employment.

"5.    The court instructs the jury that, although· you may find from the evidence in the case that the language set out in the complaint was used by the agent. or employee of the company, that such language, in its common acceptation, amounts to charging the plaintiff with a breach of the criminal law, or other dishonest practice, yet, if you further find from the evidence that such .language was spoken by the agent of the company to another in the course of his duty, and that it was necessary

or proper in the course of the investigation for such communication to have been made, in the course of duty, and not with a malicious intent to injure the plaintiff, then the court tells you as a matter of law that this would be a privileged communication, for which the agent nor the company would be liable, and your verdict would be for the defendant."

Appellant contends that the trial court committed an error in admitting evidence to prove that he was discharged for incivility. But the evidence was competent. He alleged in his complaint that, immediately after the slanderous charge was made by the detectives against him, the defendant discharged him from its employment. In response to which allegation the defendant denied that he was discharged on account of the loss of the fourteen bales of cotton, but said that his discharge was due solely to his insubordination to those in authority over him. He testified that he was discharged immediately after the alleged slanderous charges were made. The inference to be drawn from his testimony was that his discharge was based upon the charges. The testimony as to incivility was admissible to show the cause of his discharge, and that the defendant did not thereby ratify the charges of its agent.

Appellant complains of the refusal of the court to grant his request as to his reputation in the community in which he lived of being an upright, honest man. It was properly refused. His reputation was not attacked and not involved in the issues in the case. Townshend on Slander and Libel, § 387.

Appellant says that "the first instruction given at the defendant's request was erroneous in this, that the jury were thereby told, in order for plaintiff to recover, 'it must further appear that the slander was uttered with a malicious intent on the part of the defendant company to injure the plaintiff in his business or social standing.'" In this connection the court first instructed the jury at the request of the plaintiff as follows: "While it is true that malicious intent is not to be presumed, but must be proved, this proof need not be in the form of direct testimony, but may be shown by circumstantial evidence. It is for the jury to say, after considering the language of defendant's agent complained of, together with all the circumstances attending its utterance, whether such slanderous words were or were not spoken with malice, either express or

legal, as hereinbefore defined;" which was as follows: "Malice, as used in this instruction, does not mean that the agent using the alleged slanderous words must have any personal spite, ill will or hatred of the plaintiff, but means if the defamatory words complained of were wrongfully used, and were used intentionlly, without just cause or excuse, or in wanton and reckless disregard of the rights and feelings of the plaintiff, then, in the legal sense, they were maliciously used." The words objected to in defendant's instruction are fully explained in instructions given at plaintiff's request, and are in harmony with the same. The words objected to do not say how the malicious intent to injure must appear—that is shown by the instructions given at plaintiff's request. In that respect the jury were instructed as plaintiff requested, and he has no cause to complain.

The objection to instruction numbered 2, given at the request of the defendant, are the words: "the presumption is that no language was used or intended to be used to injure plaintiff's reputation in his business or social standing, and this presumption must be overcome by proof." To the same effect the court instructed the jury at the request of plaintiff by saying: "while it is true that malicious intent is not to be presumed, but must be proved." The plaintiff has no right to complain of the defendant or court repeating his own request for instructions.

The appellant objected to the instruction numbered 4, and given at the instance of the defendant, because a corporation could not, according to it, be held liable for a slander uttered by its agent "unless it authorized, approved or ratified the act of the agent in uttering the particular slander complained of, or the agent was acting within the scope of his employment." Is this a correct declaration of law? Slander is unlike other torts. It is the individual act of him who utters it, and often arises entirely out of his momentary feelings and passions, without forethought on the speaker's part. It is such an act as can not be anticipated, and for that reason can not be impliedly authorized in advance. Hence it has been held that the utterance of slanderous words by an agent of a corporation must be ascribed to the personal malice of the agent who uttered them, "rather than to the act performed in the course of his employment and in aid of the interest of his employer," and the cor-

poration must be exonerated "unless it authorized, approved or ratified the act of the agent in uttering the particular slander." Mere proof of agency will not be sufficient to prove such authority or ratification. *Singer Sewing Machine Co.* v. *Taylor,* 150 Ala. 574; *Redditt* v. *Singer Mfg. Co.,* 124 N. C. 100; *Sawyer* v. *Railroad,* 142 N. C. 1; *Behre* v. *National Cash Register Co.,* 100 Ga. 213; *Kane* v. *Boston Mutual Life Ins. Co.,* 200 Mass. 265; *State* v. *Morris & Essex Railroad Co.,* 23 N. J. Law 360; *Dodge* v. *Bradstreet Co.,* 59 How. Pr. 104; 18 Am. & Eng. Enc. Law (2 ed.), 1059, 1063; 10 Cyc. 1216.

Appellant contends that instruction numbered 5, and given at the request of the defendant, should not have been given, because there was no evidence to support it. We think the testimony of Parker was sufficient for that purpose.

Finding no reversible error in the proceedings of the court, its judgment is affirmed.