### NATIONAL PACKING COMPANY *v.* BOULLION.

Opinion delivered November 18, 1912.

LIBEL AND SLANDER—LIABILITY OF CORPORATION FOR ACTS OF AGENT.—
A corporation is not liable for the acts of an agent in making a slanderous charge against another unless the language was uttered by the

agent in the scope of his authority or was ratified by the corporation. Thus, a corporation is not liable for a slander committed by one of its servants who was authorized to investigate the accounts of its employees, to ascertain if there were shortages, and to gather the evidence tending to show who was responsible, but was not authorized to accuse any one of a crime in connection with such defalcations.

Appeal fron Pulaski Circuit Court, Second Division; *John W. Blackwood,* Special Judge; reversed.

### STATEMENT BY THE COURT.

The National Packing Company is a corporation of Illinois, doing business in Arkansas. The appellee brought suit against the packing company for slander, alleging that its auditor, "while acting in due course of his employment, committed an injury to the name and character of plaintiff by speaking the following words to plaintiff in the presence and hearing of divers persons: "Boullion, the house has been robbed, and there have been some forgeries. You acknowledge to signing these tickets, and it is up to you to make settlement." That Boullion then said: "Do you mean to charge me with robbery and forgery?" To which Fisher replied: "You need not try to throw anything over my eyes; we are not asleep. You have acknowledged to the handwriting, and it is up to you to make settlement," implying that Boullion had committed some species of larceny and forgery. Appellee prayed for $10,000 actual damages and $5,000 punitive damages.

The appellant denied that its auditor meant any injury to the good name and character of appellee, and denied that he spoke the words set out in the complaint. It denied that its auditor used any language which either charged or implied that appellee had been dishonest or had committed any forgery, or had been guilty of appropriating to his own use any money belonging to appellant. It set up that, if the auditor used the language alleged, such language was not within the scope of his employment, and was not authorized by appellant; and further that, if such language was used, it was without appellant's knowledge or consent, and it had not at any time adopted or ratified the same.

The testimony on behalf of the appellee tended to show

that he was in the employ of appellant as shipping clerk. His duties were to see that the stock of meats was taken care of and to wait on the people, see that their orders were filled and to send out merchandise on orders which came in.

On the 19th of January, 1911, one Fisher, an auditor of the appellant, was in the office of the company checking up the office. On that occasion Fisher, in a conversation with appellee, in the presence of other employees of appellant, used the language, addressed to appellee, set out in the complaint. The language was used while the auditors were making an investigation of sales tickets which had been made out by the appellee, and which appeared to have been altered. The investigation showed that there was a shortage, and the appellee testified that the auditor of the appellant used the language above, intending to accuse him of forgery and larceny.

The testimony on behalf of appellant tended to show that its auditor did not use the language set out in appellee's complaint. The auditor of the appellant, to whom the language was attributed, testified that the conversation he had with the appellee was for the purpose of trying to find the guilty party. In so doing he was carrying out the business of the company intrusted to him. He denied that he used the language set up in appellee's complaint, but stated that whatever conversation he had with the appellee was with a view of "trying to locate who the guilty party was." It was his duty, not only to locate the shortage, but to locate the responsible party. He was to find out who the guilty party was and get all the evidence he could with reference to that matter. He was to gather all the evidence he could tending to reflect the guilt of the parties responsible and to report the same to the home office. He had authority to use his own judgment and methods in securing the evidence, but was not to have the guilty party arrested.

The appellant, among other prayers, asked the court to instruct the jury to find for the defendant, which the court refused, and appellant duly excepted.

The verdict and judgment were in favor of the appellee for $250.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant; *Ralph Crews,* of Chicago, Ill., of Counsel.

1.  A corporation is not liable for damages suffered by another by reason of a slander uttered against him by an employee of the corporation, unless the utterance was authorized in advance or ratified afterward by the corporation. 95 Ark. 534.

2.  Even if Fisher wrongfully accused appellee, there was no slander, for the reason that, before the conference ended at which the alleged wrongful accusation was made, and in the presence of all who had heard the charge, it was retracted and appellee was fully exonerated.  13 Tex. 449; 3 Dana (Ky.) 138; 17 Ill. 579.

*Gus Fulk* and *Bradshaw, Rhoton & Helm,* for appellee.

1.  A corporation is liable for the slander committed by its agent within the scope of his authority.  9 L. R. A. (N. S.) 931; 17 Ann. Cases 620.

2.  If Fisher intended to charge the commission of a crime when he uttered his accusation, any explanation he made thereafter, however soon or complete, does not render his original words nonactionable.

WOOD, J., (after stating the facts).  In *Lindsey* v. *St. Louis, I. M. & S. Ry. Co.,* 95 Ark. 534, Lindsey sued the corporation for slander.  He alleged that the slanderous words were spoken "by special agents in the employ of defendant for the purpose of finding said missing cotton, and said charge was made by them in furtherance of the defendant's business, which they were employed to do for the purpose of ascertaining whether plaintiff was the guilty person or had guilty knowledge of the matter, and of inducing him, if guilty, to confess it," etc.  Lindsey contended that the slanderous words uttered by the agents of the railway company, while engaged in ferreting out the crime, were within the scope of their employment, and that the company was liable to him for slander.  The court, in passing upon his contention, said:

"Slander is unlike other torts.  It is the individual act of him who utters it, and often arises entirely out of his momentary feelings and passions, without forethought on the speaker's part.  It is such an act as can not be anticipated, and for that reason can not be impliedly authorized in advance.  Hence it has been held that the utterance of slanderous words by

an agent of a corporation must be ascribed to the personal malice of the agent who uttered them, 'rather than to the act performed in the course of his employment and in aid of the interest of his employer,' and the corporation must be exonerated 'unless it authorized, approved or ratified the act of the agent in uttering the particular slander.' Here proof of agency will not be sufficient to prove such authority or ratification."

In *Waters-Pierce Oil Co.* v. *Bridwell,* 103 Ark. 345, the plaintiff sued the oil company and its agents for slander alleged to have been committed by making defamatory statements in regard to the inspection and quality of the oil which plaintiff was engaged in selling. The plaintiff alleged "that the agents of the Waters-Pierce Oil Company, while engaged in selling its oil, stated to the customers of the plaintiff that his oil would not stand the test prescribed by the inspection laws of the State of Arkansas, and that both plaintiff and his customers in selling said oil were acting in violation of the criminal laws of the State." It was alleged that the statements were made of and concerning plaintiff's business and were injurious thereto. The court, in that case, used the following language:

"There is some conflict of authority in respect to the liability of a corporation for slander; but, inasmuch as a corporation must transact its business and perform its duties through natural persons, it is now well settled that a corporation is liable in damages for slander as it is for other torts. To establish its liability, the utterance of the slander must be shown to have been made by its authority or ratified by it, or to have been made by one of its servants or agents in the scope of his employment and in the course of the business in which he is employed."

The undisputed evidence in this case shows that it was the duty of appellant's auditor to investigate the accounts of its employees and to ascertain if there were shortages, and to gather the evidence tending to show who was responsible, but he did not have authority to accuse any one of crime in connection with such defalcations. He could select his own methods and use his own judgment in making his investigations

and in getting up the evidence; but he was not authorized to make arrests or make criminal charges against any one.

Conceding, therefore, that the language charged in the appellee's complaint was slanderous, there is no testimony to warrant the conclusion that this language was uttered by the agent of the appellant in the course of his employment or within the scope of his authority, nor was there any evidence tending to show that the alleged slanderous words were ratified by the appellant.

The facts of this record are similar to the facts in *Lindsey* v. *St. Louis, I. M. & S. Ry. Co. supra*. The agent, in that case, at the time of the alleged slanderous words, was engaged in ascertaining who committed the crime of stealing or taking cotton from the railway company. Judge HART, speaking for the court, in the case of *Waters-Pierce Oil Co.* v. *Bridwell, supra*, in approving the doctrine announced in *Lindsey* v. *Railway Co., supra*, said: "In that case the railway company had sent a special agent to trace some cotton which was missing, and the special agent accused the agent at Monticello of stealing it. The full measure of his duty was to trace the missing cotton, and his conduct in insulting the agent was entirely beyond any authority given him, either expressly or which could be fairly implied from the nature of his employment or the duties incident to it."

Applying the doctrine of the above cases to the undisputed facts in this record, we must hold that the appellant was not liable. The court therefore erred in not granting appellant's instruction No. 1, asking an instructed verdict, and in overruling appellant's motion for a new trial. The judgment is therefore reversed, and the cause dismissed.