Joseph Vowles, Appellee, v. M. F. Yakish et al., Appellants.

**CORPORATIONS: Liability for Slander by Agent.** An insurance company which *admits* its liability for loss to property covered by insurance, and authorizes its agent *to adjust and agree on the amount of the loss*, is not liable for the slanderous words of the agent in accusing the insured, during the adjustment of the loss, of having set fire to the property.

    Weaver, C. J., dissents.

**CORPORATIONS: Ratification of Agent's Unauthorized Act.** An insurance company which admits its liability for loss to property covered by insurance does not, by accepting and paying its agent's adjustment of the loss, thereby ratify the act of the agent in going outside his agency during the adjustment, and slanderously accusing the insured of having set fire to the property.

**NEW TRIAL: Verdict—Excessiveness.** Verdict for $5,000, actual and exemplary damages for slander, held excessive.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

OCTOBER 4, 1920.

REHEARING DENIED APRIL 6, 1921.

ACTION for slander. The facts are fully stated in the opinion. There was a verdict and judgment for plaintiff in the court below for $5,000 against both defendants, who appeal. —*Reversed.*

*Bollinger & Block* and *Trewin, Simmons & Trewin,* for appellants.

*Rickel & Dennis,* for appellee.

STEVENS, J.—On and for a few months prior to June 3, 1916, plaintiff conducted a grocery store in a building owned by him in Kenwood, Iowa. On the date above mentioned, the whole was totally destroyed by fire. At the time of the loss, he held a policy, issued by the defendant Security Fire Insurance Company of Davenport, Iowa, upon the building and stock of groceries. On the day of the fire, the defendant Yakish, one of the state agents of the defendant insurance company, went to the home of plaintiff, and made some inquiry as to the origin of the fire and the extent of the loss. During the conversation, the defendant informed plaintiff that it would be necessary for him to produce his invoices. It developed, however, that the invoices were all destroyed by the fire, and plaintiff had to procure duplicates from the dealers of whom he had purchased merchandise. After several attempts to adjust the loss, plaintiff, on June 29th, went with Mr. Steenberg, who was assisting him, to the office of Yakish in Cedar Rapids, in a further effort to effect a final settlement. According to the testimony of plaintiff, the conversation, which lasted for about an hour, was carried on largely between Steenberg and Yakish, and related principally to certain items of freight, which formed at that time the principal matter in controversy between them.

1. CORPORATIONS: liability for slander by agent.

The plaintiff, who is corroborated by Steenberg, testified that Yakish, at the conclusion of the above negotiations, said:

"I don't want to hear nothing about it. I ain't going to have nothing to do about it. I will make him go some. We have the goods on him."

He further testified that Steenberg then said: "You don't mean to say Mr. Vowles burned his store out, do you?" To which the defendant replied: "Yes, I do."

He also testified that, on a subsequent occasion, plaintiff and Yakish, at the request of the latter, went to a bank in Cedar Rapids, where he informed plaintiff that he was going to swear him, and put him through a test. Concerning this transaction, plaintiff testified in part:

"I says: 'I don't know. I don't see no judge nor jury. I don't see that I am in nobody's courtroom.' He says: 'That don't make no difference. I have the power to swear you.' I says: 'You can go to hell, too.' I turned around and started out of the bank. He followed me right out of the bank. He says: 'We will make you go some.' I says: 'You can go plumb to hell;' and I started up the sidewalk. He stepped down off the step and shook his finger, and says: 'I will make you go some. I have the goods on you for burning it up.'"

The foregoing are the slanderous words complained of. In his petition, which is in two counts, plaintiff alleged that, at the time the slanderous words were uttered, Yakish was the adjusting agent of the defendant insurance company, and acting for and on its behalf; that all of the statements were false, and made maliciously, and with the intent to injure and destroy the confidence of the public in plaintiff. He asks damages in the sum of $10,000. The answer of the defendant consisted of a general and specific denial, and a special plea in mitigation of damages, which, in view of the conclusion reached, is given no consideration herein. There was a verdict and judgment for plaintiff against both defendants in the sum of $5,000.

I. At the conclusion of plaintiff's testimony, the defendant moved the court for a directed verdict, upon the ground, among others, that the evidence wholly failed to show that, if the slanderous words were in fact uttered by the defendant Yakish, he was, at the time, acting within the scope of his au-

thority as an adjusting agent for the insurance company. This presents the first question for our consideration.

It is not claimed by counsel that a corporation is never liable for damages on account of slanderous utterances of its agent, but that liability is imposed only when the slander charged was uttered by the agent within the scope of his authority, express or implied. This question has been frequently discussed and passed upon by the courts of other jurisdictions, but with considerable diversity of holding. While a few courts and text-writers have announced the doctrine that a corporation is never liable for slanderous words uttered by its agent, the overwhelming weight of authority is to the contrary. The majority rule seems to be that, if the agent, acting within the scope of his employment and in the actual performance of the duties thereof, touching the matter in question, utter a slander, though without the knowledge of the corporation or with its approval, liability attaches. *Fensky v. Maryland Cas. Co.,* 264 Mo. 154 (174 S. W. 416); *Rivers v. Yazoo & M. R. Co.,* 90 Miss. 196 (43 So. 471); *Sawyer v. Norfolk So. R. Co.,* 142 N. C. 1 (9 Ann. Cas. 440); *Republic I. & S. Co. v. Self,* 192 Ala. 403 (68 So. 328); *International Textbook Co. v. Heartt.* 136 Fed. 129; *Case v. Steele Coal Co.,* 162 Ky. 68 (171 S. W. 993); *Kane v. Boston M. L. Ins. Co.,* 200 Mass. 265 (86 N. E. 302); *Crelly v. Missouri & K. Tel. Co.,* 84 Kan. 19 (113 Pac. 386); *Hypes v. Southern R. Co.,* 82 S. C. 315 (17 Ann. Cas. 620); *Redditt v. Singer Mfg. Co.,* 124 N. C. 100 (32 S. E. 392); *Palmeri v. Manhattan R. Co.,* 133 N. Y. 261 (30 N. E. 1001); *Waters-Pierce Oil Co. v. Bridwell,* 103 Ark. 345 (147 S. W. 64).

The test generally applied by the cases is: (a) Was the person who uttered the slanderous words an authorized agent of the corporation? (b) If so, was he at the time acting within the scope of his employment? (c) Was the language charged used in the actual performance of his duties touching the matter in question? Other courts have, however, held that a corporation is not liable for slander uttered by its agent, unless it affirmatively appears that the agent was expressly authorized thereby to speak the slanderous words complained of, or that the company subsequently approved or ratified the same. *Behre v. National C. R. Co.,* 100 Ga. 213 (27 S. E. 986); *Lindsey v.*

*St. Louis, I. M. & S. R. Co.,* 95 Ark. 534 (129 S. W. 807) ; *Jackson v. Atlantic C. L. R. Co.,* 8 Ga. App. 495 (69 S. E. 919) ; *Duquesne Dist. Co. v. Greenbaum,* 135 Ky. 182 (24 L. R. A. [N. S.] 955) ; *McIntyre v. Cudahy Pkg. Co.,* 179 Ala. 404 (60 So. 848) ; *Flaherty v. Maxwell Motor Co.,* 187 Mich. 62 (153 N. W. 45) ; *Singer Mfg. Co. v. Taylor,* 150 Ala. 574 (43 So. 210).

The agency of the defendant Yakish to adjust the loss for his codefendant is admitted; and, while there is direct conflict in the evidence as to whether any of the language complained of was used upon either of the occasions mentioned, the finding of the jury upon this question has support in the evidence.

The real question here to be determined is: Was the defendant, at the time he uttered the words complained of, acting within the scope of his employment, and in the actual performance of his duties touching the subject-matter of the negotiations or transaction? The mere fact that the defendant Yakish was, at the time, the agent of the insurance company to adjust the loss, and that the defamatory words were used during the negotiations, does not establish liability on the part of the company. *Kane v. Boston M. L. Ins. Co.,* supra; *Crelly v. Missouri & K. Tel. Co.,* supra; *Dolan v. Hubinger,* 109 Iowa 408; *Sawyer v. Norfolk R. Co.,* supra; *Waters-Pierce Oil Co. v. Bridwell,* supra; *Singer Mfg. Co. v. Reeves Lbr. Co.,* 95 Ark. 363 (129 S. W. 805).

We find nothing in the record specifically defining the authority of Yakish, or prescribing the scope of his employment. This is left to inference. It is, however, manifest from the purpose of the agency that Yakish had authority to adjust and agree upon a settlement of the loss that would be binding upon the company. This is conceded; but is it sufficient to establish liability? A brief review of the evidence touching the several transactions from the time of the fire will aid us at this point.

Except some general inquiry by Yakish of plaintiff, on the day of the fire, as to the possible origin thereof, the subsequent negotiations for the settlement proceeded without reference thereto, until the morning of June 29th, when plaintiff claims the defamatory words were first used. The loss on the building and fixtures was adjusted about a week after the fire. The insurance on the building was $2,500; the amount agreed upon and paid, $2,350. The walls of the building were left standing, and

were used in its reconstruction. The fixtures were a total loss, and the full amount of the insurance thereon was paid. As already stated, plaintiff's invoices were destroyed by the fire, and there was some delay in procuring duplicates. A controversy arose, at the meeting on June 29th, over an item of $168 for freight. The adjusters contended that the trade discounts, which were not otherwise taken into consideration in fixing the value of the stock, should offset this item. It was found, however, that the freight exceeded the discounts by $108. The amount finally agreed upon and paid in settlement of the loss on stock was $2,000. The exact proportion paid by the defendant is not material. While a final agreement settling the loss was not arrived at between the parties until after it is claimed the defamatory language was used, the plaintiff, in his testimony, said that the sticking point between them at the June meeting was the item of freight, "and things like that." Other companies had insurance on the property, whose representatives took part in some of the conversations.

It will be observed from the foregoing statement that the subject-matter of the negotiations was the extent of the loss, and not the origin of the fire. The latter question does not appear to have entered into the controversy at all. The defendant corporation was evidently making an effort to adjust the loss, upon the theory that it was liable therefor, under the terms of plaintiff's policy. The record contains no evidence from which it could be inferred that the company was claiming that plaintiff had set fire to the building for the purpose of obtaining the insurance. The whole controversy, so far as there was any, was over the value of the stock. As stated, an agreement eliminating the building and fixtures from controversy was early arrived at. There were numerous meetings between the parties, or their representatives, and doubtless considerable discussion as to the value of the stock; but this constituted the subject-matter of the discussion, and would seem to indicate something as to the probable scope of the defendant's employment. Authority to adjust and settle the loss was all that the business in hand required. Nothing else was involved. Liability was admitted. A settlement to be arrived at upon the basis of admitted liability involved no question as to the origin of the fire. If the fire was

set by plaintiff, or at his instigation, for the purpose of obtaining the insurance, it would be a complete defense to plaintiff's claim, but would probably not be otherwise material.

If the defamatory words had been uttered by Yakish while making an investigation as to the origin of the fire, as the agent of defendant, a different question might arise. To hold a corporation liable for the torts of its agent, the act complained of must have been performed in the course and within the scope of the agent's employment. If he exceeds his authority, and goes outside of the scope thereof to commit an unlawful act, the principal is not liable.

There is nothing in the record before us from which it can be inferred that the defendant corporation was not proceeding in good faith to adjust plaintiff's loss. It is, of course, true that the offensive language was used during the negotiations for a settlement; but, unless it was used within the scope of the agent's employment, and while he was in the actual performance of his duties touching the matter in question, the defendant company is not liable therefor. A single case selected from others cited supra will serve to illustrate the distinction suggested, which, after all, is a familiar, general rule. In *Crelly v. Missouri & K. Tel. Co.,* 84 Kan. 19 (113 Pac. 386), the Supreme Court of Kansas had before it an action for damages, based upon plaintiff's claim that she was assaulted and severely injured by one of its employees. The evidence disclosed that a local manager of the telephone company demanded of plaintiff, who was an operator in its employ, that she sign a voucher for compensation due her, and that, upon her refusal to do so, he made a violent assault upon her. The court held that the company was not liable, upon the ground that, in assaulting plaintiff, the agent was not acting within the scope of his authority, or in the actual performance of his duties. It may be that it was the duty of the operator to sign the voucher; but her refusal to do so, of course, did not justify the assault, nor should an inference, in the absence of other testimony that he was acting at the time within the scope of his employment, be permitted.

Upon both occasions when it is claimed the defamatory words were spoken, the conversation had become somewhat animated, and, upon the last occasion, the use of the slanderous words fol-

lowed the offensive language of plaintiff above set out. While it is true that the meeting of the parties to adjust the loss provided the occasion for the utterance of the slander, we see no more reason for holding that Yakish was acting within the apparent scope of his employment, when he accused the plaintiff of setting fire to his building and stock of groceries, than was the manager of the telephone company when he attempted, by the use of violence, to compel an employee to sign the voucher. We think it manifest that, in doing so, he was not acting within the scope of his employment. Corporations can only transact business through agents; and, in the absence of some testimony in the case at bar tending to show that the defendant company questioned its liability upon the ground that plaintiff set fire to his building or stock, or that Yakish was authorized and engaged in the investigation of the origin of a fire, or that its origin was in some way involved in the subject-matter of the negotiations, there is nothing to support an inference that, at the time the objectionable language was used, he was acting within the scope of his employment or authority as the agent of the defendant corporation.

II. But it is also claimed by counsel for appellee that the defendant corporation ratified the act of its agent in uttering the slander charge. This claim rests upon the approval and ac-
2. CORPORATIONS: ceptance by the company of the settlement
ratification of agreed upon between plaintiff and Yakish. It is
agent's unauthor-
ized act. not contended by appellee, either in his pleading or proof, that he was in any way induced by the alleged misconduct of the agent to enter into the settlement approved by defendant. The case is not one where the agent exceeded his authority in procuring a settlement or obtaining property which the principal seeks to take advantage of or retain. There is no question as to the authority of the agent to make the settlement; therefore, as to this matter, ratification of the principal could have been no more binding than the agreement entered into on its behalf by the agent. No money or property was received by the company. It was benefited only by its release from liability, and whatever advantage resulted from the settlement. The amount paid substantially covered plaintiff's loss, and he appears to have

been satisfied therewith. We find nothing in the record to sustain appellee's contention upon this point.

III. The jury returned a verdict in favor of the plaintiff against both defendants for $5,000. It is urged by appellants that this verdict is excessive, and the result of passion and prejudice. The evidence wholly fails to show other actual damages than such as would presumptively arise from the speaking of the slanderous words. Upon the first occasion, plaintiff and Steenberg were the only persons present who claimed to have heard the charges complained of, and upon the second occasion, but one person testified to hearing what was said. The record does not disclose a general circulation of the slander, or that it was known to anyone except the parties above indicated. Upon both occasions, it is claimed that Yakish spoke in anger, and upon the last occasion, after plaintiff had refused to be sworn, as requested by the agent and as authorized by the policy, and after he had told Yakish "to go to hell." As the jury was authorized, under the instructions, to return a verdict for both actual and exemplary damages, we may assume that at least the larger part of the verdict is made up of exemplary damages. Unless this is true, it is so grossly excessive as to indicate passion and prejudice upon the part of the jury. We think the verdict is excessive; and, as the instructions of the court authorized the allowance of both actual and exemplary damages, it cannot be sustained. *Wildeboer v. Petersen,* 182 Iowa 1185; *Cain v. Osler,* 168 Iowa 59; *Ahrens v. Fenton,* 138 Iowa 559; *Waltham Piano Co. v. Freeman,* 159 Iowa 567; *Jolly v. Doolittle,* 169 Iowa 658; *Andreas v. Hinson,* 157 Iowa 43, and cases cited; *Dahl v. Hansen,* 152 Iowa 555, 556.

3. NEW TRIAL: verdict: excessiveness

It is our conclusion, therefore, that the evidence, as shown by the record before us, did not justify the court in giving Instruction No. 1, which, in substance, advised the jury that the defendants were equally liable, if it found that the defamatory words were spoken, and that, instead, the motion of the defendant company for a directed verdict, upon the ground that, if Yakish uttered the slander charged, he was manifestly acting beyond the scope of his employment, should have been sustained. Numerous other important questions are discussed by counsel;

but in view of the conclusion reached, that the judgment below must be reversed as to both defendants, we find no occasion to discuss or decide the same.   For reasons indicated, the judgment below is—*Reversed*.

LADD, EVANS, and SALINGER, JJ., concur.

WEAVER, C. J. (dissenting).   There may be room for debate upon the correctness or sufficiency of some of the instructions given to the jury, or upon the alleged excessiveness of the damages allowed; and, if the reversal of the judgment below were ordered on that ground alone, I would not burden the record with a dissent, although, in my opinion, the court's charge to the jury presents no reversible error.

I am, however, wholly unable to agree to a reversal on the grounds stated by the majority.   It is conceded that, according to the better rule, and the weight of modern authority, "if the agent, acting within the scope of his employment and in the actual performance of the duties thereof touching the matter in question, utter a slander, though without the knowledge or approval of the corporation, liability attaches."   With that definition I am, for the purposes of this case, content.   It is also conceded that Yakish was the company's agent, to adjust the plaintiff's loss under his policy of insurance; and that the jury could properly find, under the evidence, that, while he was negotiating such settlement or adjustment with the plaintiff, a dispute arose over some of its details, in the course of which, and in the presence of other persons, Yakish spoke the slanderous words, in effect charging plaintiff with having burned his own goods, to defraud the insurance company.   If these two propositions of law and conceded fact, taken together, do not make a case for recovery by plaintiff against both Yakish and the corporation which he represented, then I confess my utter inability to comprehend the force and effect of the simple language in which the majority itself has framed them.

Yakish was the company's agent, to treat with plaintiff and adjust the loss.   It was his business and duty to obtain for the company the most favorable terms of settlement he could secure. He met plaintiff for that purpose.   He did enter into negotia-

tions with plaintiff to effect that adjustment. During that nego-
tiation, he resisted or denied plaintiff's right to payment of cer-
tain items of alleged loss, and, in a heated discussion over this
subject of disagreement, he made the slanderous charge. Can
it be soberly contended that, in this business, Yakish was not
"acting within the scope of his employment," or that he was not
"in the actual performance of the duties" of such employment,
or that the words were not spoken "in connection with the busi-
ness" in which he was engaged? Indeed, is it not perfectly ap-
parent, or, to say the least, could not the jury properly have
found, that the slanderous charge was made with the intent and
purpose to induce plaintiff to recede from his demand and ac-
cept settlement on the company's terms? In short, does not the
record thus made and thus stated by the majority make a con-
clusive case for the plaintiff, upon the majority's own theory of
the law?

The method adopted by the majority to avoid the natural
and inevitable effect of their own concessions is to point out that,
when the slanderous charge was made by Yakish, the "subject-
matter of the negotiation was the extent of the loss, and not the
origin of the fire. The latter question does not appear to have
entered into the controversy at all. The corporation was evi-
dently making an effort to adjust the loss on the theory that it
was liable therefor under the terms of the policy. * * * The whole
controversy, so far as there was any, was over the value of the
stock." Assume this to be literally true, and I still respectfully
ask, "What of it?" In what possible manner does this affect
the situation? Assume that the company had not before charged
any wrong to the plaintiff with respect to the fire, or that if,
having a suspicion or belief that the plaintiff had burned the
property, it had concluded to waive the defense, and make the
best obtainable settlement of the loss, it still remains admitted
that the matter of the insurance, the amount to be paid, was then
unadjusted, and that the company, by and through Yakish, was
still treating with plaintiff to obtain such adjustment; and it
was in this immediate connection, and as a part of said transac-
tion, and as a leverage by which Yakish was endeavoring to in-
duce plaintiff to yield an item of his claim, that Yakish spoke
the slander. To hold that this does not constitute a sufficient

showing to maintain an action for slander against Yakish and the principal whom he represented, is to deny the authority of every law writer on this subject within the last 50 years, the authority of our own decisions, and the authority of the very rule of law laid down by the majority in the first paragraph of its opinion, as stating the rule established by the overwhelming weight of the precedents.

I shall not undertake any review of the authorities; but, as indicating that I am not indulging in extravagance of statement, I desire to cite a few illustrative cases, premising the same with the proposition which I do not understand the majority to deny, that, according to the modern and well-established doctrine, a corporation is liable for its torts committed by or through its agents, to the same extent as is an individual person under similar circumstances. Angell & Adams on Corporations (11th Ed.), Sections 385, 389.

Corporations may thus be held civilly responsible for assaults (*St. Peter v. Iowa Tel. Co.*, 151 Iowa 294, *Nesbit v. Chicago, R. I. & P. R. Co.*, 163 Iowa 39); for malicious prosecution (*White v. International Textbook Co.*, 173 Iowa 192); for libel (*Philadelphia, W. & B. R. Co. v. Quigley*, 21 How. [U. S.] 202); for slander (*Rivers v. Yazoo & M. R. Co.*, 90 Miss. 196 [43 So. 471], *Williams v. Planters' Ins. Co.*, 57 Miss. 759 [34 Am. Rep. 494], *Hypes v. Southern R. Co.*, 82 S. C. 315, *Palmeri v. Manhattan R. Co.*, 133 N. Y. 261, *Roemer v. Schmidt Brewery Co.*, 132 Minn. 399 [157 N. W. 640], *Fensky v. Maryland Cas. Co.*, 264 Mo. 154).

In the *Palmeri* case, the company's ticket agent accused the plaintiff of having given him a counterfeit coin, demanded repayment, and, becoming angry, denounced her as a counterfeiter. This was held actionable slander by the company. The court says:

"The agent was acting for his employers, and with no other conceivable motive, losing his temper and injuring and insulting the plaintiff upon the occasion. He believed that plaintiff had passed a counterfeit piece of money upon him, and thus had obtained a passage ticket and good money in change. What he did was in the endeavor to protect and recover his employer's property, and if, in his conduct, he committed an error, which was

accompanied by insulting language and the detention of her person, the defendant, as his employer, is legally responsible in an action for damages for the injury.''

In the *Roemer* case, the plaintiff had been acting as an agent of the Schmidt Brewery Company. The company sent one Sullivan to audit and check up plaintiff's account. Disputes arose, and the defendant ordered plaintiff's discharge from its service. On being told of his discharge, plaintiff asked Sullivan for the balance due on his salary, and Sullivan, in refusing the demand, stated that plaintiff had embezzled $6,000 of the company's money. In affirming a judgment against the company for the slander so uttered, the court says that:

''A master is responsible for the torts of his servant done in the course of his employment, with a view to the furtherance of his master's business, and not for a purpose personal to himself, whether the same be done negligently or willfully, but within the scope of his agency, or in excess of his authority, or contrary to the express instructions of the master.''

In the same case, the court further says:

''There is evidence to the effect that Sullivan had authority to adjust and settle plaintiff's account; and the finding of the jury that he uttered the slanderous words while engaged in the performance of that duty, and while acting within the scope of his employment, cannot be disturbed.''

The language quoted is too patly applicable to the case at bar to require further remarks thereon.

Another court says, in substance, that the test inquiry concerning the liability of a corporation for slander by an agent is whether or not he uttered the slanderous words in endeavoring to promote the corporation's business, within the scope of the actual or apparent authority conferred upon him for that purpose. *Rosenberg v. Underwriters Salvage Co.*, 190 Ill. App. 64. And the rule making a corporation liable for slander by an agent in connection with any business or transaction entrusted to him recognizes no distinction between classes of agents, and is not limited in its application to officers or managers. *Fensky v. Maryland Cas. Co.*, supra; 5 Thompson on Corporations (2d Ed.), Section 5441.

Without prolonging the dissent for further quotations, I

cite, as having direct bearing upon the law applicable to this case, 10 Cyc. 1210; *Grand Union Tea Co. v. Lord*, 231 Fed. 390 (145 C. C. A. 384); *Singer Mfg. Co. v. Holdfodt*, 86 Ill. 459; *McDonald v. Franchere Bros.*, 102 Iowa 496; Newell on Slander (3d Ed.) 438; *Cumberland U. R. Co. v. Baab*, 9 Watts (Pa.) 458; *Goddard v. Grand Trunk R. Co.*, 57 Me. 202; 2 Corpus Juris 847 *et seq.*; 7 Ruling Case Law 683, Section 684; Story on Agency (9th Ed.), Section 452.

It has also been frequently held that, "in all cases, whether the act was committed by the servant in the service of his employer or for his own purpose is one for the jury, in view of all the circumstances." See Wood on Master and Servant 594; *Daniel v. Petersburg R. Co.*, 117 N. C. 592; *Hussey v. Norfolk So. R. Co.*, 98 N. C. 34. This rule was also quoted approvingly by us in *Nesbit v. Chicago, R. I. & P. R. Co.*, 163 Iowa 39, 53.

To conclude, I repeat that the reversal of the judgment below upon the grounds suggested in the opinion is a clear departure from the majority's statement of the applicable rule of law, and the decision so announced is out of harmony with all our own cases upon the civil responsibility of a corporation for torts by its agents, to say nothing of the overwhelming weight of authority in general on this and related subjects.

PRESTON, J., concurs in the foregoing dissent.