SOUTHERN ICE CO. *v.* JOSEPH R. BLACK.

*(Knoxville.    September Term, 1916.)*

**1. CORPORATIONS.    Libel and slander.**

A corporation may be liable in a civil action for damages for publishing a malicious libel.    (*Post, pp.* 395-398.)

Cases cited and approved: Hypes v. So. Ry. Co., 82 S. C., 315; Rivers v. Y. & M. V. R. Co., 90 Miss., 196; Grand Union Tea Co. v. Lord, 231 Fed., 393; Fensky v. Maryland Casualty Co., 264 Mo., 154; Waters-Pierce Oil Co. v. Bridwell, 103 Ark., 345; Singer Mfg. Co. v. Taylor, 150 Ala., 574; Behre v. Nat. Cash Register Co., 100 Ga., 213; Sawyer v. N. & W. R. Co., 142 N. C., 1; McIntyre v. Cudahy P. Co., 179 Ala., 404; Duquesne Dist. Co. v. Greenbaum, 135 Ky., 182; Kane v. Life Ins. Co., 200 Mass., 265; Markley v. Snow, 207 Pa., 447; Int. Textbook Co. v. Heartt, 136 Fed., 129.

**2. CORPORATIONS.    Libel and slander.    Liability of corporation.**

A corporation is not liable, without proof of malice, for damages for slander spoken by one servant to another while acting within the scope of his authority and in the interest of the master, but not actually authorized to speak the slanderous words; such words being a qualified privilege.    (*Post, pp.* 398-400.)

Cases cited and approved: Glasgow v. Lorimer, 21 Ann. Cas., 341; Sawyer v. Norfolk, etc., R. Co., 142 N. C., 1; Hypes v. So. Ry. Co., 82 S. C., 315.

**3. LIBEL AND SLANDER.    "Qualified privilege."**

"Qualified privilege" extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest or in reference to which he has a duty to a person having a corresponding interest or duty, although the duty be not a legal one, but of a moral or social character of imperfect obligation; and it arises from the necessity of full

and unrestricted communication concerning a matter in which the parties have an interest or duty. (*Post, pp.* 400, 401.)

Case cited and approved: Chambers v. Leiser, 43 Wash., 285.

4. **TRIAL.   Peremptory instruction.**

On motion for peremptory instruction, the entire evidence is to be considered, and, if it fails to show a cause of action, the motion should be granted. (*Post, pp.* 401, 402.)

Cases cited and approved:  Tyrus v. Railroad, 114 Tenn., 579; Greenlaw v. Railroad, 114 Tenn., 187;  Railroad v. Finley, 122 Tenn., 127;  King v. Cox, 126 Tenn., 553.

5. **TRIAL.   Peremptory instruction.**

One moving for peremptory instruction is not required to formulate the evidence and sign a statement, as under a demurrer to the evidence, but the motion can be made orally upon the evidence as delivered before the court and jury. (*Post, pp.* 401, 402.)

6. **APPEAL  AND  ERROR.    Sufficiency  of  objection  per se. Question of qualified privilege.**

In slander action, the question of qualified privilege, although not expressly urged upon the trial judge, was properly raised by motion for directed verdict for defendant; as such motion presented the question of liability upon the entire record. (*Post, p.* 402.)

Cases cited and approved:  McKee v. Hughes, 133 Tenn., 456; Cooley v. Galyon, 109 Tenn., 1;  Lea v. White, 36 Tenn., 111.

7. **LIBEL AND SLANDER.   Burden of proof.   Malice.   Qualified privilege.**

In slander action, where defendant has a qualified privilege, the burden of proof is on the plaintiff to show that the words were used to express malice toward him. (*Post, p.* 402.)

8. **LIBEL AND SLANDER.   Privilege.   Loss.**

In action for oral slander by statement of one servant to another in the course of his employment that plaintiff was dishonest, the privilege was not lost because of the presence of the bookkeeper and his assistant; they being present because they were

keeping the books in which would be entered the settlement based on the alleged dishonest act. (*Post, pp.* 402, 403.)

Cases cited and approved: Shurtleff v. Stevens, 51 Vt., 501; Somerville v. Hawkins, 10 C. B., 583; Nichols v. Eaton, 110 Iowa, 509; Denver Pub. Warehouse Co. v. Holloway, 31 Colo., 432; Chambers v. Leiser, 43 Wash., 285; Ramsdell v. R. R. Co.. 79 N. J. L., 379; Edwards v. Kevil, 133 Ky., 392; Brow v. Hathaway, 13 Allen (Mass.), 239; Ashcroft v. Hammond, 197 N. Y., 488.

## FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Nathan L. Bachman, Judge.

Cogswell & Fletcher, for plaintiff.

Sizer, Chambliss & Chambliss, for defendant.

Mr. Justice Lansden delivered the opinion of the Court.

This is an action for damages for oral slander uttered by the foreman of the plaintiff in error, which is a corporation, against defendant in error. The words averred in the declaration are: "I have located the man who stole the tickets. It is Joe Black, and I have discharged him." And in the second count of the declaration it is averred that plain-

tiff in error's foreman said of and concerning defendant in error: "You are a damned thief." There were verdict and judgment for plaintiff below, which was affirmed by the court of civil appeals, and the case is before us upon petition for *certiorari.*

The facts necessary to be stated are as follows: The plaintiff in error issued to Hunt's Bakery a book containing tickets or coupons good for two thousand pounds of ice. Afterwards Hunt gave notice that he wanted to surrender this book, and, according to the custom of plaintiff in error in such cases, it sent an employee named Huggins to take up the book and collect for what had been used out of it and return the book to the office. Huggins took it up as directed, and put it in his pocket, but his pocket was ripped, and the book slipped out and was lost. Later a coupon out of the book was brought in by one of the drivers, who had been delivering ice for plaintiff in error, and it was found that the book was in the possession of Joe Light, who said that he had bought it for $2 from Dick Light. Plaintiff in error paid Joe Light the $2 for the unused portion of the book and took it up. Dick Light testified that he got the book from one Galliger, and Galliger testified that he got it from the defendant in error, Black. Black denied that he gave the book to Galliger or that he had anything to do with it or knew anything about it. It is admitted, however, that defendant in error went with Huggins when he took up the book and rode with him in his buggy for several hours. He was also an employee of plaintiff in error,

After the book had been redeemed by plaintiff in error, its foreman, one Gardner interviewed defendant in error and Huggins together about the loss of the book, and in the course of the interview made the slanderous statements set forth in the declaration. Defendant in error says that the foreman, in the presence of Huggins, called up the manager of plaintiff in error and used the words set forth in the first count of the declaration. He says that the foreman then took him and Huggins into another room and asked them about the tickets, and in Huggins' presence called plaintiff a "damned liar and a damned thief." This is denied, in substance, by both Huggins and Gardner, but defendant in error testified as stated. Black was discharged, and when he applied to the company for the amount due him he was required by the manager to account for the $2 which had been paid to redeem the book. This was done in the office and in the presence of the bookkeeper and assistant.

Many questions are made in this court upon assignments of error, which are nine in number, but we will consider only two of them as they are conclusive of the case.

It is well settled that a corporation may be liable in a civil action for damages for publishing a malicious libel. 10 Cyc., 1215. But the liability of a corporation for oral slander uttered by one employee against another is not so clear. Some of the cases hold that the law will ascribe them to the personal

malice of the employee rather than an act performed in the course of his ʿemployment and in aid of ʾthe interest of his employer. Other cases hold that a corporation is liable as in other torts. The learned court of civil appeals took the latter view, and for its conclusion cites the following cases: *Hypes* v. *Southern Railway Co.*, 82 S. C., 315, 64 S. E., 395, 21 L. R. A., (N. S.), 873, 17 Ann. Cas., 620; *Rivers* v. *Y. & M. V. R. Co.*, 90 Miss., 196, 43 South., 471, 9 L. R. A. (N. S.), 931; *Grand Union Tea Co.* v. ʾ*Lord*, 231 Fed., 393, 145 C. C. A., 384; *Fensky* v. *Maryland Casualty Co.*, 264 Mo., 154, 174 S. W., 416; 5 Thompson on Corporations (2d Ed.), sec. 5441; 1 Clark & Marshall on Corporations, 627; *Waters-Pierce Oil Co.* v. *Bridwell*, 103 Ark., 345, 147 S. W., 64, 32 Ann. Cas., 1914B, 837.

The contrary doctrine is announced in *Singer Mfg. Co.* v. *Taylor*, 150 Ala., 574, 43 South., 210, 9 L. R. A., (N. S.), 929, 124 Am. St. Rep., 90; *Behre* v. *National Cash Register Co.*, 100 Ga., 213, 27 S. E., 986, 62 Am. St. Rep., 320; 10 Cyc., 1216; Townsend on Slander & Libel (4th Ed.) 474, 475; 19 A. & E. En. L. (2d Ed.), 1059; *Sawyer* v. *Norfolk & W. R. Co.*, 142 N. C., 1, 54 S. E., 793, 115 Am. St. Rep., 716, 9 Ann. Cas., 440; *McIntyre* v. *Cudahy P. Co.*, 17 Ala., 404, 160 South., 484; *Duquesne Dist. Co.* v. *Greenbaum*, 135 Ky., 182, 121 S. W., 1026, 24 L. R. A. (N. S.), 955, 21 Ann. Cas., 481; *Kane* v. *Boston Mut. Life Ins. Co.*, 200 Mass., 265, 86 N. E., 302; *Markley* v. *Snow*, 207 Pa., 447, 56 Atl., 999, 64 L. R. A.,

685; *International Text-Book Co.* v. *Heartt*, 136 Fed., 129, 69 C. C. A., 127.

It is not meant that all of the foregoing cases state the doctrine in exact accord, but they all hold that a corporation is not liable for oral slander in the broad sense that it is liable for other torts of its servants. Most of the cases seem to recognize a difference between slanderous words which are spoken and slanderous words which are written. This distinction, we think, is well founded both in law and in fact. It is a matter of common knowledge that corporations must employ many servants, and that many of them do not weigh their words and are easily provoked to anger. It would be an extreme hardship to hold a corporation liable for the slanderous words spoken by each servant in its employ and who may speak them in connection with the duties which he is employed to perform. To apply the ordinary rule governing the relationship between master and servant, and governing the liability of the master for the torts of his servants, would be to hold the corporation liable for torts which were not contemplated when the contract of employment was made. The same would often be true of private individuals. To hold that the master is liable for slanderous words spoken in the same manner that he is liable for other torts of his servant would be to extend the law of oral slander far beyond what the facts and the contemplation of the parties include. If one employs a servant about his household, it

certainly is not contemplated that the servant will slander those with whom he may be brought in contact while performing his duties. We do not say that a corporation or an individual would not be held liable in particular cases for the slanderous words uttered by a servant; but to make a case of liability the plaintiff must show either that the master expressly authorized the speaking of the slanderous words, or that it would be necessary to speak them in the course of the performance of the duty assigned to the servant, or that it has been ratified by the master.

The precise question presented is the liability of a corporation for damages for oral slander spoken by one servant of another while acting within the scope of his authority and in the interest of the master, but who was not actually authorized to speak the slanderous words. We do not think speaking the slanderous words would fall reasonably within the contemplation of the parties when they made the contract of employment, either that the master impliedly authorized the foreman to speak the words, or that he so agreed to indemnify his other servant against such conduct.

It is not like the master's implied agreement to furnish a safe place to work, safe machinery, and the like for which he must respond in damages if he fails in such duty. These duties are parts of the contract of employment, though unexpressed, and are said to be absolute. But the speaking of slanderous words is so often the re-

sult of an outbreak of temper, and is always an expression of opinion, that it is usually disconnected from the servant's duties, and cannot reasonably be said to be an unexpressed part of the contract of employment. Hence Gardner's opinion that Black got the coupon book, and is a thief and a liar, being unauthorized, is no ground of action against the common employer.

What we have said, of course, does not apply to a third party to whom the master owes a special duty. It does not apply to the case of a passenger on a public conveyance nor to a customer invited on the premises of the owner, nor to any other one to whom the master actually or impliedly owes a special duty. The authorities from which we have drawn the foregoing conclusions can be found by an examination of *Glasgow* v. *Lorimer,* 21 Ann. Cas., 341; *Sawyer* v. *Norfolk etc., R. Co.,* 142 N. C., 1, 54 S. E., 793, 115 Am. St. Rep., 716, 9 Ann. Cas., 440; *Hypes* v. *South. Ry. Co.,* 82 S. C., 315, 64 S. E., 395, 21 L. R. A. (N. S.), 873, 17 Ann. Cas., 620.

In the case of *Glasgow* v. *Lorimer,* supra, the House of Lords in 1911 ruled that it was necessary in such a case for the plaintiff to show "that the expression of such an opinion was within the scope of his employment," from which it follows, on the authorities, "that the corporation is not responsible for a slander uttered by him in the expression of that opinion." The scope of the servant's employment in that case "included the collection of the police

assessments payable by the pursuer's husband and the granting of receipts therefor." Upon the presentation of a receipt for the taxes which the servant was trying to collect, he accused plaintiff of forgery. It was said that it was not within the scope of the servant's employment to do more than report the occurrence to his superiors and inspect their books. His expression of his opinion that the plaintiff had forged the receipt was held to be beyond the scope of his employment.

There was no publication of the statements averred in the declaration other than to those immediately interested in the transaction. It is said by defendant in error that the foreman called the manager of the ice company on the telephone and uttered the words set forth in the first count in the declaration. As stated, this is denied by the foreman, manager, and the witness Huggins, but no other or further publication is claimed by the plaintiff. All of the parties to whom the publication was made are interested in the transaction. Huggins was interested because the loss of the coupon book laid between him and the defendant in error, and the manager of plaintiff in error, as well as its foreman, was interested in the transaction because the loss of the book involved a financial loss to it.

We think the words spoken by the foreman were qualified privilege. It was not full privilege. By this is not meant that the words are not slanderous *per se,* and therefore ordinarily actionable; but what is

meant is that such a communication is not actionable unless malice is proven. Qualified privilege extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person, having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation. Newell on Libel & Slander (5th Ed.), sec. 493, Odgers (5th Ed.), p. 227; Townsend (4th Ed.), 299; *Chambers v. Leiser,* 43 Wash., 285, 86 Pac., 627, 10 Ann. Cas., 270. The rule announced is necessary in order that full and unrestricted communication concerning a matter in which the parties have an interest or a duty may be had. It is grounded upon public policy as well as reason.

The court of civil appeals held that the plaintiff in error was not in a position to make the question of privilege because it was made for the first time in that court. In this we think there was error. There was a motion in the court below for peremptory instructions, and this raised the question of law as to whether there was any proof tending to show express malice. That court was of opinion that Gardner was well warranted in believing that defendant in error stole the coupon book. There is no proof of express malice existing between Gardner and defendant in error, or of anything except the transaction

set out in this opinion. On the motion for peremptory instructions the entire evidence is to be considered, and if it fails to show a cause of action, the motion should be granted. *Tyrus* v. *Railroad,* 114 Tenn., 579, 86 S. W., 1074; *Greenlaw* v. *Railroad,* 114 Tenn., 187, 86 S. W., 1072; *Railroad* v. *Finley,* 122 Tenn., 127, 118 S. W., 692, 18 Ann. Cas., 1141. The one making the motion for peremptory instructions is not required to formulate the evidence and sign a statement, as under a demurrer to the evidence, but the motion can be made orally upon the evidence as delivered before the court and jury, and in such cases, the opinion of the court is merely invoked as to whether it is a case proper for the jury or one for the court alone. *King* v. *Cox,* 126 Tenn., 553, 151 S. W., 58.

The record in this case does not show that the special ground of qualified privilege was urged upon the trial judge, but we think the motion for a directed verdict properly raised   the question as it presented the question of liability upon the entire record. The burden of proof was on the plaintiff to show that the words spoken were used with express malice towards him. *McKee* v. *Hughes,* 133 Tenn., 456, 181 S. W., 930, L. R. A., 1916D, 391; *Cooley* v. *Galyon,* 109 Tenn., 1, 70 S. W., 607, 60 L. R. A., 139, 97 Am. St. Rep., 823; *Lea* v. *White,* 4 Sneed, 111.

The requirement of Black to pay back the $2 was a ratification of the slander by the company, because it must have adopted Gardner's opinion that

Black got the book.   But it was qualified privilege and before Black can recover he must show express malice.   The contrary is shown.   Black called upon the manager for a settlement in the office of the company and in the presence of the bookkeeper and his assistant.   All present were interested in as much as the manager had the right to state his terms of settlement, and the privilege was not lost because of the presence of the bookkeeper and his assistant because they were to keep the books.   Authorities supra; *Shurtleff* v. *Stevens,* 51 Vt., 591, 31 Am. Rep., 698; *Somerville* v. *Hawkins,* 10 C. B., 583; *Nichols* v. *Eaton,* 110 Iowa, 509, 81 N. W., 792, 47 L. R. A., 483, 80 Am. St. Rep., 319; *Denver Pub. Warehouse Co.* v. *Holloway,* 31 Colo., 432, 7 Ann. Cas., 840; *Chambers* v. *Leiser,* 43 Wash., 285, 86 Pac., 627, 10 Ann. Cas., 270; *Ramsdell* v. *Penn. R. R. Co.,* 79 N. J. Law, 379, 75 Atl., 444; *Edwards* v. *Kevil,* 133 Ky., 392, 118 S. W., 273; *Brow v. Hathaway,* 13 Allen (Mass.), 239; *Ashcroft* v. *Hammond,* 197 N. Y., 488, 90 N. E., 1117.

Reversed and dismissed.