IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 2000 SESSION

# GLENDA R. TATE v. BAPTIST MEMORIAL HOSPITAL

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 85694     The Honorable Kay S. Robilio, Judge**

---

**No. W1999-00553-COA-R3-CV - Decided July 28, 2000**

---

Hospital employee was accused of negotiating payroll checks of other employees and was discharged. Employee filed defamation suit, and trial court granted summary judgment because the pleadings and affidavits established that there was no publication of the alleged defamatory words since all communication thereof was to hospital employees.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which HIGHERS, J., and FARMER, J., joined.

Joanne M. Jenkins, Memphis, For Appellant

Paul E. Prather, Robert D. Meyers, Jason G. Wolfkill, Memphis, For Appellee

### OPINION

This is a defamation case. Plaintiff, Glenda R. Tate, appeals from the order of the trial court granting summary judgment to defendant, Baptist Memorial Hospital (hereinafter Hospital). The sole issue is whether the trial court erred in granting summary judgment.

Plaintiff filed this action after she was terminated from her position as a supply technician in the Materials Management Department (hereinafter MMD) at Hospital. The complaint avers that she was accused of negotiating another employee's payroll check, or, in other words, "was accused of having obtained and cashed several checks which did not belong to her." She alleges that the accusation was false and was published to other employees of the hospital.

A review of the affidavits and pleadings in the case indicates that there is no real dispute of material facts.

On June 22, 1996, eight payroll checks for Hospital's Central Supply Department (hereinafter CSD), a subgroup of MMD, were reported missing. Dorothy Watts Crossman, Director of the MMD, confirmed with the payroll department that the checks had been issued and were missing. She requested replacement checks and turned the matter over to payroll and security to investigate.

Hospital security, led by Lieutenant W.E. Richardson, investigated the missing checks. Richardson interviewed Celia Easley, Crossman's manager, regarding procedures followed for distributing payroll checks. He also met with Carmen Patterson in Hospital payroll who showed him copies of four checks that had not been recovered and four checks that stop payment orders were issued on after they were negotiated by persons other than the payee/employee.

Lieutenant Richardson also spoke with the owner of New Asian Food Store on 414 N. Cleveland in Memphis, Tennessee, where several of the missing checks had been cashed. He then obtained a list of names and photo identification of all CSD employees and showed the photos to the owner of Person's Big Star, Walter Person on 4001 Chelsea Extended in Memphis, Tennessee, where someone attempted to negotiate the checks. Person and Diane Marcum, a store employee, identified plaintiff as one of the individuals who had attempted to negotiate two of the missing checks.

On August 7, 1996, Richardson interviewed plaintiff concerning her involvement with the missing payroll checks. Plaintiff denied cashing any checks at either location. Based on the information gathered thorough the investigation, Richardson concluded that plaintiff had attempted to cash one of the missing payroll checks and one of the replacement checks at Person's Big Star.

Crossman notified plaintiff by letter dated August 5, 1997, that she was suspended pending investigation of the missing checks. After hospital concluded its investigation, it discharged plaintiff on September 5, 1997, for "wrongfully attempting to negotiate another employee's pay check."

Plaintiff then pursued Hospital's problem solving procedure, a three step internal grievance process. During the final step, a hearing was held before a hospital panel including employees and management personnel. On November 1, 1996, the panel upheld plaintiff's termination.

Plaintiff's complaint alleges that the Hospital negligently and maliciously investigated the missing checks and that as a result a false communication harming her reputation was published to other hospital employees.[1]

The trial court granted summary judgment in part stating that plaintiff failed to establish that Hospital or its employees published any defamatory remarks about plaintiff or that Hospital or its employees made any statement that was knowingly false or in reckless disregard of the truth.[2]

---

[1] The complaint also alleges that she was forced to self publish the defamation in attempting to find other employment.

[2] The trial court reserved judgment on the issue of self publication pending the issuance of an opinion on this issue in a case before the Tennessee Supreme Court. After the Supreme Court denied the viability of compelled self publication in *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569, 571 (Tenn. 1999), the trial court followed suit and dismissed plaintiff's claim on this issue, making the order granting summary judgment a final judgment.

Plaintiff has appealed, and the only issue for our review is whether the trial court correctly granted the Hospital's motion for summary judgment.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

To establish a prima facie case of defamation, the plaintiff must establish that: (1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).

Hospital first asserts that the trial court correctly granted its motion because plaintiff failed to prove there was a publication to anyone. Publication is an essential element of a defamation action without which a complaint must be dismissed. *Applewhite v. Memphis State University*, 495 S.W.2d 190, 192-93 (Tenn. 1973); *Freeman v. Dayton Scale Co.*, 159 Tenn. 413, 19 S.W.2d 255, 256 (Tenn. 1929); *Woods v. Helmi*, 758 S.W.2d 219, 222-23 (Tenn. Ct. App. 1988).

In *Freeman*, the plaintiff brought suit for libel based on the content of a letter sent by an agent of defendant. The plaintiff contended that the libel was published by dictation to a secretary and transcribed. The Supreme Court held that a communication of a defamatory matter to a co-

employee of a corporation is not a publication because the co-employee has no distinct third party entity. ***Freeman***, 19 S.W.2d at 258. The court, in addressing the issue of communications between employees, quoted with approval from 18 A.L.R. 772, 778:

> The more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that, where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel.

***Freeman***, 19 S.W.2d at 257.

In ***Woods v. Helmi***, 758 S.W.2d 219 (Tenn. Ct. App. 1988), the plaintiff, a certified registered nurse anesthetist, brought suit against her immediate supervisor and others seeking damages for alleged defamation and wrongful interference with employment. ***Id.*** at 220. The plaintiff and her supervisor were both employed by the Regional Medical Center in Memphis (The Med). ***Id.*** The Med had a unique arrangement for the operation of its anesthesiology department in that it had its own paid employees and also had physicians provided by the University of Tennessee employed as part of the staff of The Med. ***Id.*** at 220-21. The plaintiff's supervisor issued a memo concerning operating room behavior of the plaintiff that was sent to persons who "had managerial, supervisory or administrative responsibilities and oversight for [the] internal affairs of The Med's anesthesiology department and were immediately interested in the information transmitted." ***Id.*** at 222. The Court noted that communication of defamatory matters between the agents and officers of the corporation in the ordinary course of business is not a publication. ***Id.*** (citing ***Freeman v. Dayton Scale Co.***, 159 Tenn. 413, 19 S.W.2d 255 (Tenn.1929)). In this vein, the Court said:

> We interpret ***Freeman*** and its progeny to mean that communication among agents of the same corporation made within the scope and course of their employment relative to duties performed for that corporation are not to be considered as statements communicated or publicized to third persons.

***Id.*** at 223.

In ***Perry v. Fox***, No. 01A01-9407-CV-00337, 1994 WL 715740, (Tenn. Ct. App. December 21, 1994), plaintiff was fired from his job at South Central Bell Telephone Company ("SCB") after being accused of work related misconduct including malicious destruction of property, impersonation of another SCB employee, incorrectly documenting time, and making unauthorized representations to a SCB customer. Plaintiff filed a defamation suit against Fox, an employee of SCB, and SCB based upon a memorandum Fox prepared and distributed which stated that plaintiff had been terminated for malicious destruction of property and that in the future plaintiff would not be welcome on company property. Plaintiff further alleged that SCB failed to make a reasonable investigation into the allegations against him before terminating his employment. In upholding the trial court's grant of summary judgment in favor of the defendants, the court stated:

> It is an elementary rule in this state that publication is an essential element of a libel action without which a complaint must be dismissed. *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn.1973); *Woods v. Helmi*, 758 S.W.2d 219 (Tenn. Ct. App.1988). Taken in the light most favorable to the plaintiff, the memorandum was disseminated to certain fellow employees of the plaintiff. This action falls short of publication within the ambit of the rule. As stated in *Freeman v. Dayton Scale Co.*, 159 Tenn. 413, 19 S.W.2d 255 (Tenn. 1929), "where communication is made to a servant or business associate in the ordinary or natural course of business there is no actionable libel." *See also*, *Woods*, *supra*.

*Perry*, 1994 WL 715740, at * 2.

In the present case, plaintiff claims she was defamed by communications to others which resulted in the firing being common knowledge in the hospital. However, plaintiff fails to establish who made the communications which she believes to be defamatory. It appears that the communications in the present case were made by the employees in the scope and course of their employment relative to duties performed for that corporation. The statements made by security personnel while questioning plaintiff and other hospital employees were made during the course of an investigation. Therefore, the required publication is not present.

The plaintiff argues that statements made by unidentified employees to other employees regarding plaintiff's termination constitute defamation for which Hospital should be liable. However, plaintiff has not shown that Hospital authorized the statements. In *Southern Ice Co. v. Black,* the Court held that a corporation is not held liable for the slanderous words spoken by an employee unless the plaintiff shows that either the employer authorized the speaking of the slanderous words, or that it would be necessary for an employee to speak them in the performance of the duty assigned to the employee, or that the statements had been ratified by the employer. *Id.* at 398.

Furthermore, even if the statements made by Hospital are defamatory, we believe Hospital is entitled to summary judgment because its statements are conditionally privileged under a common interest privilege.

In *Pate v. Service Merchandise Co., Inc.*, 959 S.W.2d 569 (Tenn. Ct. App. 1996) this court discussed conditional privileges:

> A conditional privilege is recognized where the interest which the defendant is seeking to vindicate or further is regarded as sufficiently important to justify some latitude for making mistakes. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 115, at 825 (5[th] ed. 1988). The Tennessee Supreme Court authorized conditional privileges in *Southern Ice. Co. v. Black*, 136 Tenn. 391,

189 S.W. 861 (1916):

> Qualified privilege extends to all communications made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty to a person having a corresponding interest or duty; and the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation . . . The rule announced is necessary in order that full and unrestricted communication concerning a matter in which the parties have an interest may be had. It is grounded in public policy as well as reason.

*Id.* at 401, 189 S.W. 861 (citations omitted); *see also Price v. Sale*, 8 Tenn. C.C.A. 382, 392-3 (1918).

Conditional privileges may cover many different types of interests including a common interest and a public interest. Keeton et al, *supra*, at 826-31. The common interest privilege has been recognized in Tennessee to cover communications between employees or agents of the same business or corporations. *See Woods v. Helmi*, 758 S.W.2d 219 (Tenn. Ct. App. 1988); *Southern Ice Co.*, 136 Tenn. 391, 189 S.W.2d 861.

\*       \*       \*

The privilege can be lost, however, if the defendant does not act with good faith or acts with actual malice. When a statement is conditionally privileged, it is not actionable unless actual or express malice is shown by the plaintiff. *Woods v. Helmi*, 758 S.W.2d 219, 224 (Tenn. Ct. App. 1988); *Southern Ice Co.*, 136 Tenn. at 401, 189 S.W.2d 861. Once privileged, the statement is presumed to have been made without malice, and the burden is on the plaintiff to prove express malice. *Langford v. Vanderbilt University*, 44 Tenn. App. 694, 318 S.W.2d 568, 576 (1958). To prove actual malice, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, and that publishing, with such doubt, shows reckless disregard for truth or falsity and demonstrates actual malice. *Moore v. Bailey*, 628 S.W.2d 431, 433-4 (Tenn. Ct. App. 1981).

*Id.* at 575-576, 577-578.

In ***Dickson v. Nissan Motor Mfg. Corp.***, No. 87-289-11, 1988 WL 9805, (Tenn. Ct. App. Feb. 10, 1988), an employee, Dickson, filed suit against his employer for alleged slanderous statements made by his superiors. Dickson was fired from the Defendant corporation for insubordination and for speaking to his superior in an obscene and threatening manner. In holding that the Defendants' statements were protected under a qualified privilege, this Court stated:

> One is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information as to how they are conducted, or to information that affects their common interest, even though he is not personally concerned with the information. Restatement of Torts 2d.1977--596, comment c.

* * *

> This Court agrees with the argument of defendants that, where a plant employee is discharged, the employer has a privileged right to state and the other employees have a privileged right to hear that the discharge has taken place and the grounds therefor, stated in general terms.

*Id.* at *7-8.

The record does not show actual malice on the part of the Hospital, nor does the record indicate that hospital acted negligently in investigating the missing checks. The statements by Hospital to its employees regarding the reason for plaintiff's termination are privileged under a common interest privilege and, therefore, are not actionable.

Accordingly, for the reasons set out above, the order of the trial court granting summary judgment to defendant is affirmed. Costs of this appeal are assessed against the appellant, Glenda R. Tate.

                                          _____
                                          W. FRANK CRAWFORD, PRESIDING
                                          JUDGE, W.S.

-7-